No. 32,654

ODESSA FLORENCE KIRBY, *Appellee*, v. SAMUEL S. KIRBY, *Appellant*.

(55 P. 2d 356)

Opinion filed March 7, 1936.

W. E. *Broadie,* of Kinsley, for the appellant.

*John A. Etling* and *A. L. Moffat,* both of Kinsley, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action for a divorce, and from a judgment in favor of plaintiff the defendant appeals.

The propositions advanced in argument require a somewhat detailed statement of facts. The parties were married in 1918 and lived until 1926 at various towns in Kansas. The husband was a physicist and had been teaching in Friends University at Wichita. In 1926 he obtained a federal appointment in the Bureau of Standards at Washington, D. C., to which city the family moved. There were two children, who on April 12, 1934, were about thirteen and fifteen years of age, respectively. On that date the wife commenced an action in the supreme court of the District of Columbia (hereafter called the D. C. court), for a divorce *a mensa et thoro* by filing a verified bill of complaint which alleged that both she and her husband were residents of the District of Columbia. Omitting certain allegations not here material, it was further alleged that during the entire period of their married life defendant had pursued a course of cruel treatment toward the plaintiff, threatening her with bodily harm, and on January 1, 1934, he had beat her, that his conduct toward the children was such as to have a tendency to lower their morals. At the time the petition was filed, a motion for alimony *pendente lite* was filed. On April 30, 1934, the husband answered the bill of complaint and motion, admitting the marriage and residence in the district and denying the acts of cruelty charged against him as well as that his conduct tended to debase the morals of the children. He pleaded fully with respect to his earnings and property. On the same day the court made its order allowing her alimony *pendente lite* and awarded her the custody of the children until further order of the court. On June 15, 1934, plaintiff filed a petition for permission to take the children to Kansas until September. The husband filed an answer in opposition, and on June 29 the court made its order denying the petition. Notwithstanding the

denial of her petition, the plaintiff took the children and came to Kansas. The husband shortly discovered her disobedience to the court's order and on July 14 filed his petition calling attention of the court thereto, and asking that a rule to show cause in contempt issue, that the custody of the children be awarded him and that he be relieved from further payments of alimony *pendente lite*. On July 18 an order was made amending the order of April 30, so as to relieve him from further payments of the alimony. On August 28 the husband filed a petition reviewing some of the previous proceedings and charged that his wife had taken the children to the home of plaintiff's foster mother who was a ·Christian Scientist, and if the occasion arose they would be denied medical treatment. Attention was again directed to the violation of the court's previous order, and an application was made for a rule to show cause why the custody of the children should not be changed and awarded to the defendant. The court considered the petition and made its order that the plaintiff on September 11, 1934, show cause, if any she had, why the custody should not be changed. This rule was served upon the plaintiff in Kinsley, by the sheriff of Edwards county.

On the day set the petition was heard and the prayer granted, and Mrs. Kirby was directed to turn over the children to the custody of her husband. After this order was made the husband came to Kansas and ultimately to Edwards county where, under the terms of the order, he demanded the children from the plaintiff. She refused, and on September 25, 1934, he filed an action in habeas corpus to recover their possession. This matter was set for hearing on September 26. On September 25 the instant action was filed, service being had on the defendant on September 26. At the time the petition was filed an order allowing the plaintiff temporary alimony, support for the minor children, and restraining defendant from interfering with the plaintiff's custody of the children was made. Defendant appeared specially and moved to quash service of summons on the ground that he was exempt from service. This motion was overruled, and the overruling thereof is one of the errors complained of.

Thereafter, on February 18, 1935, defendant filed an answer in the Kansas action setting out facts with reference to his residence, denying that he was a resident of the state of Kansas and raising again the question of his exemption from service of summons. He also alleged that the plaintiff at the time of the filing of the action had

not been an actual resident in good faith of the state of Kansas, as required by the statute. On March 8, 1935, upon plaintiff's motion, this answer was stricken from the files, for the reason defendant had not complied with the order with reference to alimony, etc. At the risk of confusion, but in order that a chronological statement may be made, the following is noted. On February 21, 1935, in the action pending in the D. C. court, the defendant filed his amended answer and cross bill for affirmative relief, in which he asked for a decree of divorce *a mensa et thoro* on the ground of desertion. Thereafter in that court on March 14, 1935, Mrs. Kirby filed her motion to dismiss her bill of complaint. On April 6, 1935, in the Kansas court, defendant filed his motion for permission to defend the action under the answer originally filed by him. On April 16, 1935, he served a notice to take the deposition of himself and other witnesses. Thereafter on April 18, 1935, the plaintiff in the Kansas action filed a long motion reciting the history of previous proceedings, and asked that the defendant be compelled to comply with the previous orders of the court with respect to allowances and to pay the additional sum of $100 for expense in taking depositions, failing payment of which the defendant be restrained from taking any deposition, and on April 19, 1935, the court made an order to that effect. Meanwhile, on April 18, 1935, the action pending in the D. C. court was tried, that court finding that when Mrs. Kirby filed her action on April 12, 1934, she was a resident of the District of Columbia, as was the defendant, Samuel S. Kirby; that the matrimonial domicile of the parties was and had been since July 15, 1926, in the District of Columbia; that the plaintiff had deserted the defendant, that her original bill of complaint should be dismissed, and that the defendant should be awarded a decree of limited divorce from the plaintiff upon the ground of desertion, that the custody of the minor children should be awarded to the defendant subject to the further order of the court, and that the defendant, Samuel S. Kirby, did not treat the defendant, Odessa F. Kirby, with cruelty during the married life of the parties, but demeaned himself properly and was in all respects a fit and proper person to have the custody and control of the minor children, and entered its decree dismissing plaintiff's original bill of complaint, awarding the defendant a divorce *a mensa et thoro* from his wife upon the ground of desertion, and awarding him the custody of the children until further order of the court, the plaintiff to be permitted to see and visit

the children at all reasonable times. Thereafter, on May 4, 1935, in the Kansas action the defendant filed a supplemental answer alleging the bringing of the action in the D. C. court and the subsequent rendition of the decree above referred to. There were also requisite allegations as to the general jurisdiction of that court, that the court had full and complete jurisdiction of the parties to the action and of the subject matter of the action, that the decree remained unreversed and in full force and effect and was entitled to full faith and credit by virtue of the provisions of the constitution of the United States and the laws of the state of Kansas, and that under said decree the plaintiff was barred and estopped from further prosecuting the action in Kansas and from obtaining any relief thereunder, and duly authenticated copies of the pleadings, service, motions, orders, findings and decree were attached to and made a part of the answer. On June 5, 1935, the case in Kansas came on for trial. Objections to its being heard were made by the defendant on jurisdictional grounds and on the further ground that all issues had been previously adjudicated in the D. C. court. These objections were overruled, and the case proceeded to trial. At the trial, the plaintiff's evidence went no further than to prove acts of cruelty during the married life of the parties, the last act complained of being on January 1, 1934. We need not notice other proceedings at the trial as a result of which the court found that the plaintiff and defendant were at the commencement of the action and for many years prior thereto legally domiciled in the state of Kansas; that the children were at the institution of the action and ever since had been within the jurisdiction of the court, that plaintiff was a proper person to have their care and custody, and:

"The court further finds that on April 12, 1934, plaintiff herein instituted an action in the supreme court of the District of Columbia, against the defendant, for legal separation, alimony and custody of minor children, in which action the defendant filed an answer and cross petition for the same relief; that thereafter and on April 17, 1935, the defendant, upon his answer and cross petition, procured a decree, in said action, for legal separation and custody of the minor children of said parties, but that said plaintiff was not present at said hearing, either in person or by authorized counsel, and was in no manner represented therein, and at the time of granting said decree to said defendant, plaintiff and said minor children had returned to their domicile in Kansas, and were residing at Kinsley, Edwards county, Kansas, and that this action was instituted by plaintiff in this court on September 25, 1934, and said defendant was personally served with summons herein."

And upon such findings the court granted to the plaintiff a divorce from the defendant, making an allowance to her for permanent alimony, for attorney's fees, and an order for the future support of the minor children. The defendant appeals, his specifications of error covering three main propositions: (1) That the court erred in overruling his motion to quash the service of summons; (2) that the court erred in striking from the files his answer to the petition and in restraining him from taking depositions; and (3) that the court erred in refusing to give full faith and credit to the decree of the D. C. court.

1. On the hearing of defendant's motion to quash the service of process on him, he offered his affidavit setting out his claim as to being a resident of the District of Columbia, and that he came to Edwards county solely for the purpose of obtaining possession of the children by habeas corpus action if necessary, and actually instituted that action which was pending and to be heard on the day he was served. The plaintiff was called as a witness in opposition and her testimony raised an issue as to whether the parties had ever abandoned their permanent residence in Kansas. It was the duty of the court to determine relinquishment or retention of an admitted previous residence in Kansas, and its denial of the motion to quash implies a finding against the defendant. (*Sluss v. Brown-Crummer Inv. Co.*, 137 Kan. 847, 850, 22 P. 2d 965.) It is not the province of this court to retry the issue. The trial court having so found, and it appearing the plaintiff resided in Edwards county, under R. S. 1933 Supp. 60-1502, the suit was rightly brought in that county and the defendant could be served with summons there. Whatever may be the general rule with reference to exemption from service of summons in a county upon one who as a litigant is necessarily present within the county—and as to the rule we do not comment—it cannot be applied against the plain terms of a statute permitting the service of process to be made. It has not been made to appear the trial court erred in ruling on the motion to quash.

2. Owing to our final conclusion, we do not find it necessary to discuss fully the claim that the trial court erred in striking the answer from the files and in refusing to permit the defendant to take depositions, or in the exclusion of evidence further than to remark that the statutes with reference to temporary allowances for the wife and the children, and for expenses of the wife that she may make an efficient preparation of her case, are not subject to the

will and caprice of the husband. The orders complained of were regularly made, and the attitude of the husband, who seems to have avoided coming into Edwards county after he was served on September 26, 1934, was such the trial court was warranted in adopting stern measures. Whether those measures were too stern is beside the point, for ultimately the record of the divorce action in the D. C. court was admitted. In this connection, defendant complains that he was prevented from offering certain evidence. It was not offered in the form of affidavits or otherwise as provided by R. S. 60-3004, and error cannot be predicated thereon. It has not been made to appear the trial court erred in striking pleadings from the files, in preventing the taking of depositions or in the exclusion of evidence.

3. Did the trial court err in refusing to give full faith and credit to the decree of the supreme court of the District of Columbia? It appears that whether properly or not, the wife commenced an action in that court, alleged that she and her husband were residents of the District of Columbia, and under the action sought affirmative relief. She obtained custody of the children, and inferentially she received alimony *pendente lite* until she disobeyed an order of that court and brought her children to Kansas. Although shortly before that action was tried on its merits she filed a petition to dismiss her bill; prior thereto her husband had filed a cross bill. When that court on final hearing dismissed her bill of complaint it did not deprive itself of jurisdiction to try the cause on the defendant's cross bill. Its final decree has been mentioned. The trial court in Kansas found that plaintiff was not present, either in person or by counsel, when the D. C. court heard that case and rendered its decree, and that she and her children had returned to Kansas, where she instituted the present action in which personal service was had on the defendant. In effect, the trial court held that Mrs. Kirby could start an action for divorce in a court of competent jurisdiction in the District of Columbia, obtain some relief from it, then abandon that action and come to Kansas to start another action, and because she got personal service on her husband she was not bound by what the D. C. court did. Such a holding is not proper. Whether the plaintiff was honestly mistaken or not as to where her true residence was when she filed the first action, actually she and her husband were within the jurisdiction of that court. In her petition to that court she solemnly stated she was a resident of the District of Columbia. On that petition, she asked for and received an order for custody

of the children, and she asked for alimony *pendente lite.* A somewhat analogous situation was involved in *Bledsoe v. Seaman,* 77 Kan. 679, 95 Pac. 576, where plaintiff sought to avoid the force and effect of a decree of divorce rendered in South Dakota. She and her husband were residents of Kansas. Her husband went to South Dakota and brought suit for divorce. She followed him there and filed a cross petition alleging she was a resident of that state, and on her cross petition a decree was rendered in her favor, as well as a judgment for alimony and the custody of her minor child. In denying her contention that she was not bound by the South Dakota decree, this court said:

"She has retained the exclusive possession and control of the child during that time. The judgment for alimony still stands in her favor. A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment and, after having obtained the relief desired, repudiate the action of the court on the ground that it was without jurisdiction. The question whether the court had jurisdiction, either of the subject matter of the action or of the parties, is not important in such cases. Parties are barred from such conduct, not because the judgment obtained is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated. People who invoke the action of a court, and, through negligence or falsehood, mislead the court as to the existence of the facts upon which its jurisdiction depends, and obtain a judgment for relief, will not afterward be heard to deny the validity of such judgment. (16 Cyc. 795-800; *Ogden v. Stokes,* 25 Kan. 517.)" (p. 684.)

It must be held that plaintiff, by reason of the institution of the action in the District of Columbia, and the allegations of her petition, could not be heard to say, on the trial in Edwards county, that the supreme court of the District of Columbia was without jurisdiction of the parties to the action and of the subject matter of the action.

In many cases where there has been controversy over the binding force of a decree of divorce, the crux of the controversy has been over the question of whether the service on the defendant was constructive or personal. Here we are not confronted with that difficulty. Mrs. Kirby invoked the jurisdiction of the supreme court of the District of Columbia. Even though she were a resident of Kansas, even though our statute did not recognize the binding force of a decree rendered on publication service, she could not collaterally attack the decree rendered. If it is to be set aside, it must be in a direct action in that court. It is not claimed there was any fraud on the part of the defendant in obtaining the decree

in his favor on his cross bill. Were that true, still Mrs. Kirby's relief would have to be obtained in a direct attack. As bearing on this feature of the case, as well as on the general question of the binding force and effect of the decree, see *McCormick v. McCormick,* 82 Kan. 31, 107 Pac. 546. (See, also, *Phillips v. Phillips,* 69 Kan. 324, 76 Pac. 842.) Even though the decree had been obtained as a result of constructive service upon Mrs. Kirby, in an action brought by her husband, it would not have been subject to collateral attack. (See *Miller v. Miller,* 89 Kan. 151, 155, 130 Pac. 681.)

Neither is it of consequence that before the action in the supreme court of the District of Columbia was finally determined, an action in Kansas was filed for the same relief, in which personal service was obtained. The pendency of the first action was not a bar nor a cause for stay of the proceedings in this state, and had its judgment been rendered before judgment was rendered in the D. C. court, it would have been good. (*Omer v. Omer,* 108 Kan. 95, 193 Pac. 1064.) But the fact that an action was pending in Kansas at the time the judgment was rendered in the D. C. court did not prevent that judgment from being pleaded as *res judicata* in Kansas. (*U. P. Rly. Co. v. Baker,* 5 K. A. 253, 47 Pac. 563.) And the weight of authority in other jurisdictions is to the same effect. In 9 R. C. L. 374 (Divorce and Separation, § 164), it is said:

"A valid decree of divorce rendered in another jurisdiction than that in which the subsequent decree is sought is a bar to the subsequent proceedings. And the general rule applies also where the decree of divorce was rendered in proceedings instituted after the proceedings were commenced in which it is sought to be availed of as a defense. Such a case is simply one of concurrent jurisdiction in the courts of two states, and the judgment or decree first rendered dissolving the marriage relation concludes the question in the court of the other jurisdiction. The foreign decree of divorce must, however, have been a valid decree of divorce, entitled to full faith and credit in the jurisdiction in which the subsequent decree is sought."

And in Keezer on Marriage and Divorce (2d ed.), p. 372, § 536, is the following:

"It is the rule that a decree by a court having jurisdiction of the parties and the subject matter is a complete bar to a subsequent suit between the same parties for the same relief. In other words, the courts will refuse to reëxamine the same facts on the same charge in a subsequent case between the same parties. A former adjudication in another case between the parties, as to who was at fault for the separation, concludes the parties on this issue."

It is true that our statutes do not in terms provide for a decree

*a mensa et thoro,* although in many respects similar relief may be granted under R. S. 60-1506. The fact the decree is for a limited instead of an absolute divorce does not, however, mean the decree is not entitled to full faith and credit to the extent to which it grants relief. In 3 Freeman on Judgments (5th ed.), p. 2972, § 1442, it is stated:

"A limited divorce *a mensa* is as much entitled to full faith and credit under the constitution or principles of international comity as an absolute one. A wife's decree of separate maintenance in another state is conclusive as to every matter adjudicated by it, in harmony with the general rules as to what is adjudicated by such a decree and its effect in a subsequent suit for divorce. If it adjudicates that she was not guilty of cruelty, or that he was guilty of cruelty, it is *res judicata* of this issue. So if the decree was on the ground of abandonment by the husband, it is conclusive of this fact. If he consented to a decree on a stipulation that she was living separate from him for legal cause, this is conclusive against him in his subsequent suit for divorce in another state. A decree of divorce *a mensa* in favor of the husband is likewise entitled to the same effect elsewhere as it has where rendered. A decree denying relief in a suit for divorce *a mensa* is conclusive in a subsequent divorce suit of all the issues adjudicated. Thus a finding against a claim of cruelty is *res judicata* in the husband's suit for desertion."

And see *Harding v. Harding,* 198 U. S. 317, 25 S. Ct. 679, 49 L. Ed. 1066.

It thus appears that the decree of the supreme court of the District of Columbia was entitled to full faith and credit and the failure to so recognize it was error. Giving it such recognition, it must be held that at the date of its rendition it settled all matters between the parties up to its date. Being a limited divorce, it would not bar an action for an absolute divorce on grounds arising after its rendition, although in some states, because of statutory provisions as to the kinds of divorce which may be granted, even that result would not necessarily follow. See the annotation on extraterritorial recognition and effect of a divorce *a mensa et thoro,* 4 A. L. R. 858.

We need not elaborate on the question of whether plaintiff was entitled to an absolute divorce for matters arising after the filing of her petition in the supreme court of the District of Columbia, for, from a careful examination of the record, which has been procured for that purpose, we find the last act of alleged cruelty testified to occurred on January 1, 1934, or some months prior to the filing of the first petition. While not couched in identical language, in the petition in each case plaintiff charged her husband with ex-

440

treme cruelty in that he beat her and was guilty of conduct that had a tendency to debase the morals of their children. With that testimony before the trial court in the action in Kansas, and with the authenticated copy of the proceedings and decree in the supreme court of the District of Columbia admitted in the record and urged as a final determination of all matters in dispute, it was error for the trial court to ignore the prior adjudication, and to render a judgment in favor of plaintiff contrary to such prior adjudication.

The judgment of the trial court is reversed, and the cause remanded with instructions to render judgment for the defendant.