No. 38,740

FRANCES M. FINCHAM, *Appellee*, v. ARTHUR S. FINCHAM, *Appellant*.

(255 P. 2d 1018)

Opinion filed April 11, 1953.

*W. D. Jochems,* of Wichita, and *George Barrett,* of Pratt, argued the cause, and *Omer Poos,* of Hillsboro, Illinois, was with them on the briefs for the appellant.

*Paul R. Wunsch,* of Kingman, and *E. E. Sattgast,* of Wichita, argued the cause, and *John Madden, Jr.,* of Wichita, was with them on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for divorce and alimony. From the decree in favor of plaintiff on both points the defendant has appealed.

The parties met at Colorado Springs and after an acquaintance of a few weeks they were married at Albuquerque, New Mexico, June 23, 1941. At that time plaintiff was 45 years of age, defendant was 64. It was the second marriage for each of them. She had one child by her first marriage, a married son who was then living in Wichita. He had four children by his first marriage, all adults, with homes of their own. She had a residence property in Enid, Oklahoma, and a small amount of other property. He had a business property, also a residence property, in Pratt and owned land in Pratt, Finney, Meade, Gray and Kiowa counties in Kansas and in Texas County, Oklahoma, aggregating about 3,600 acres. Shortly before their marriage they entered into an antenuptial agreement by the terms of which, in the event of his death prior to hers, she was to have one-fifth of his property, the remainder to go to his children. It contained a provision that in the event of a divorce between them she should receive $2,000 and no more. They moved to their home in Pratt, where they lived together as husband and wife until June 16, 1944, when he brought a suit against her for divorce on the grounds of extreme cruelty and gross neglect of duty. Among other things in his petition he set up the provision of the contract that she was to have $2,000 in the event of a divorce and tendered that sum into court. She filed an answer in which she denied the grounds of divorce alleged in plaintiff's petition, and by cross petition set up their antenuptial contract and alleged it had not been fairly and understandingly made; that it was unjust and inequitable in its provisions and that there was fraud and over-reaching on the part of plaintiff in securing defendant's signature thereto; that it offended against public policy and was unenforceable in that its terms invited and encouraged a separation of the parties, and asked that the contract be set aside. The reply was a

general denial. At the trial the court held the evidence on plaintiff's behalf was insufficient to justify the court in granting to him a divorce and the relief he prayed for in his petition was denied. Respecting the antenuptial contract the court held it was fairly and intelligently entered into and just and reasonable in its terms, except the provision to the effect that if a divorce should be granted between the parties the defendant should have $2,000 and no more, which the court held to be void as against public policy. The trial court held this provision, however, to be separable and that it should be stricken from the contract and the remainder of the contract sustained as a valid contract. From this judgment the plaintiff appealed and the defendant filed a cross-appeal. Upon the appeal the opinion of this court may be found in 160 Kan. 683, 165 P. 2d 209, to which reference is made for the specific holding of this court and the reasons therefor. It is sufficient here to say that this court found the provisions of the antenuptial contract as to what the wife would receive in the event of a divorce was contrary to public policy and that it permeated the entire contract to such an extent as to render the contract void. After our mandate went down there appears to have been a controversy among counsel as to whether the trial court in that case could make a division of property between the parties, and we were asked to amplify our mandate in that particular. Although this court was of the view that matter had been made clear in the opinion above mentioned an additional per curiam opinion was written (see 161 Kan. 753, 173 P. 2d 244), which concluded:

"The motion is allowed and the original mandate is hereby amplified to authorize the district court, if it believes good cause be shown, to make such division and disposition of the property of the parties, or of either of them, as may be proper, equitable and just in the premises."

In the trial court there was some evidence of the value of the property of the plaintiff, which the court found to be between $150,000 and $160,000, and made a division of property, real or personal, of the parties as follows: Of the property of the plaintiff the court awarded $35,000 in cash to the defendant, which sum he paid; also awarded to her of the property of the plaintiff the residence property in the city of Pratt, together with the household furniture and fixtures, which property he delivered to her. It was further ordered that the defendant should retain all the real or personal property which she owned at the time of her marriage to plaintiff or acquired since that date. The decree continues:

"It is further considered, ordered, adjudged and decreed that the title to and the right of possession thereof of the residue and the remainder of the property of the plaintiff, Arthur S. Fincham, real or personal, and wherever situate, is hereby vested absolutely in fee simple in the said plaintiff, Arthur S. Fincham, free from all claim of the defendant, Frances Marie Fincham.

"It is further considered, ordered, adjudged and decreed that the property awarded, set aside or decreed herein to be the separate property of the plaintiff or the defendant shall vest in the respective party in fee simple with full right to convey, alienate, devise and dispose of the same without the consent of the other."

This decree was rendered November 23, 1946. There is nothing said in the decree about the parties living together or apart. As a matter of fact it appears they did not live together as husband and wife at any time after the action was brought, June 16, 1944. As a matter of fact it appears that thereafter the husband lived, part of the time at least, in Arkansas, but was also in Kansas a part of the time to look after his business in this state. While living in Arkansas, Arthur S. Fincham brought an action there against his wife for a divorce. Her attorneys had that dismissed upon the ground that he had not been a resident of the state a sufficient time to maintain the action. Later he brought a second action, with the same result. The wife lived in Pratt until she sold the residence property there which had been awarded to her in the divorce case and moved to Wichita, where she was living at the time the present action was brought.

In this action plaintiff filed her petition April 14, 1949, in which she alleged jurisdictional grounds, gave her address as Shirkmere Apartments in Wichita, gave defendant's address at Pratt, Kan., 510 South Pine Street, alleged she was married to defendant at Albuquerque, N. Mex., June 23, 1941, and that they are now husband and wife; that since their marriage she has conducted herself as a faithful and dutiful wife; that through no fault of her own defendant has been guilty of abandonment for one year, extreme cruelty and gross neglect of duty, by reason of which they could no longer live together in peace and harmony; that at the time defendant abandoned her he was the owner of certain described real estate, describing all the land in the five counties in Kansas and in Texas County, Oklahoma, involved in the Pratt county action; that in addition thereto defendant owned cash in bank, wheat in storage, U. S. government bonds, and has had the income from the described real property, and that she was informed and believes

defendant is worth more than $200,000; that since his abandonment of plaintiff defendant has conveyed large portions of his property to his children by a former marriage, has concealed personal property, and that unless defendant is enjoined he will dispose of all, or a great portion, of his property or conceal the same and place it beyond the jurisdiction of the court to prevent the enforcement of any judgment she may receive for alimony. The prayer was for an absolute decree of divorce, for an order restraining or attaching the property of plaintiff, for restoring the name of plaintiff to Frances M. Rancier, and for an order for temporary alimony, attorneys' fees and costs, and for judgment for permanent alimony, attorneys' fees and costs, and such other relief as the court may find proper. Upon the filing of the verified petition the court made an *ex parte* order that defendant pay to the clerk of the court for plaintiff, by April 20, 1949, the sum of $250 temporary alimony and a like sum on the 20th day of each month until the further order of the court; also $500 temporary attorneys' fees of plaintiff's attorneys, and enjoined defendant from disposing of any of his property, real or personal, including money in the bank, government bonds, or the sale of wheat, except such amount as may be necessary to pay the sums stated in the order. A summons was duly issued to the sheriff of Pratt county to be served on the defendant at 510 South Pine Street, Pratt. The injunction order and summons were sent to the sheriff, who served the summons by putting it in the mail box. No service was made on the injunction order. On June 1, 1949, defendant's counsel filed a special appearance and motion to set aside the summons on the ground that defendant did not reside at the address given in Pratt county but was and had been for some time a resident of the state of Arkansas. Three days later, on June 3, 1949, counsel for plaintiff filed an affidavit for publication service in which it was stated that they were unable to get personal service upon defendant within the state and that he claimed to be a resident of the state of Arkansas and residing at 108 Berry Street in Hot Springs, Garland County, Arkansas, and beginning on June 4 a notice of service by publication was published in one of the Wichita papers. Also, there was sent to the sheriff of Garland County, Arkansas, a foreign summons to be served upon the defendant, which was duly served on June 6, 1949, by which defendant was directed to answer in forty-one days. On June 17, 1949, plaintiff's counsel filed an affidavit for attachment in which it was alleged,

among other grounds, that the defendant "is a nonresident of the state of Kansas." Attachment orders were sent to the sheriff of each of the counties in which defendant's property was situated and were duly served. Also plaintiff caused notice of *lis pendens* to be filed in each of the counties where defendant's property was situated. (See, G. S. 1949, 60-2601 and 60-2602.) On June 29, 1949, defendant made application to the court for the appointment of a receiver and on the same day a receiver was appointed, who duly qualified and who undertook to take into possession all of defendant's property he found in the state. The most he collected was for rent of the business property in Pratt. On June 21, 1950, the receiver was discharged. Plaintiff appealed from that order, which was sustained in this court in case No. 38,202, by an opinion which may be found in 171 Kan. 120, 231 P. 2d 232, from pages 125 to 128. The receiver continued to act pending that appeal.

All of the above orders were made *ex parte*. On June 29, plaintiff caused an alias summons to be issued and directed to the sheriff of Pratt County, Kansas. This was duly served on defendant on June 20, 1949. On July 14, 1949, defendant appeared by his attorneys and filed a motion for a bill of particulars and for time to plead. This motion was allowed on August 11, 1949.

In the meantime defendant in this case, on May 12, 1949, had filed a complaint in equity in the chancery court of Garland County, Arkansas, which alleged that plaintiff was a resident of Arkansas and had been for more than three months before filing the complaint; that he and plaintiff were married on June 23, 1941, and separated in May, 1944, and "have not co-habited together since"; that plaintiff was entitled to a divorce from defendant for the reason that they have lived separate and apart without cohabitation continuously for a period of three years; that the cause for divorce occurred within five years next before the filing of the complaint; that no property rights are involved in the action; that no children were born as a result of the union, and prayed that the bonds of matrimony between him and defendant be cancelled and forever held at naught, and that he be restored to all the rights, privileges and immunities of a single and unmarried person, and for other just and proper relief. The defendant in that action, plaintiff here, was duly notified of that proceeding, in harmony with the laws of Arkansas, and on July 5, 1949, the chancellor heard the case and rendered a decree, which recites:

"That it appears to the satisfaction of the Court from the proof of publication therein filed that the defendant has been duly notified for the time and in the manner prescribed by law of the pendency of this suit; that she was further notified by Hon. Jay Rowland, appointed attorney ad litem, by United States registered mail; that the plaintiff appeared in person and by his attorneys and defendant appeared not. That the court having heard the evidence, both oral and by depositions, finds that the proof of publication, together with the report of the attorney ad litem, showed that the defendant was legally and aptly notified of the pendency of the suit; that the complaint states a valid cause of action under the laws of the State of Arkansas because of three years separation, the parties not having co-habited together for more than three years next before the filing of this suit; that from a preponderance of the testimony, the plaintiff is entitled to an absolute decree of divorce from the defendant; that the plaintiff is and has been a bona fide resident of the state of Arkansas and the county of Garland for more than one year next before the filing of the complaint herein; and that plaintiff's cause of action accrued in this state within five years next before the filing of the complaint herein. It was adjudged and decreed by the court that the bonds of matrimony between plaintiff and defendant are cancelled, dissolved, set aside, severed and annulled and plaintiff is granted an absolute decree of divorce from the defendant, not only from bed and board, but from the bonds of matrimony as well; the parties are hereby restored to the status of single and unmarried persons; each party is hereby ordered restored to all property not disposed of at the commencement of the action, which either party obtained from or through the other during the marriage and in consideration or by reason thereof."

On September 8, 1949, defendant filed his answer (leave to file it out of time having been given by counsel for plaintiff). This contained a general denial of the grounds of divorce alleged by plaintiff, pleaded the division of property in the Pratt county case as being a bar to plaintiff's action for alimony, and pleaded the Arkansas divorce decree in defense of plaintiff's action for divorce.

On November 5, 1949, plaintiff filed a reply to defendant's answer in which plaintiff admitted the Pratt county litigation, but specifically denied that the judgment rendered in the Pratt county case is *res judicata* or constitutes any defense to plaintiff's claim for alimony. With respect to the Arkansas decree it is alleged that proper service was not had upon the defendant in that action and denied that the decree rendered therein is *res judicata*, or that it is a final judgment which bars the plaintiff from any relief sought by her, and denied that the decree rendered therein is a valid judgment. Replying further, the plaintiff alleged that if the decree obtained in the chancery court of Garland County, Arkansas, is such a judgment as must be given full faith and credit, then in that event it does not bar this plaintiff from alimony and property rights as prayed for in

her petition. The reply further denied, generally and specifically, each of the allegations of defendant's answer. On November 8, 1949, the case came on for trial and some evidence was taken. The taking of testimony was adjourned and taken up on different dates to December 12, 1949, when the evidence and argument of counsel were completed and the court took the matter under advisement.

Under date of April 28, 1950, the court wrote a letter to the attorneys in the action stating his views with respect to the Arkansas case as follows:

"In regard to the above matter I have thoroughly examined the records and files in the case and the decisions of our Court. In my opinion as a result thereof the present action was filed in this jurisdiction and it purported service obtained. In which case there was a subsequent motion attacking the service which was not presented to the Court, and there were later two attempts made to obtain other service, one of personal service finally being obtained, and during the time that this action was pending the defendant therein filed an action in the State of Arkansas obtaining foreign service as provided by the Arkansas statute, and a judgment was later obtained with no appearance whatsoever by the plaintiff in the Sedgwick County Kansas action in said Arkansas proceedings. Therefore at the time the Arkansas decree was obtained, which did not cover any personal or property rights of the parties but only undertook to decree a divorce, there was an actual case pending in the State of Kansas. For that reason I do not believe there is any requirement for this Court to give full faith and credit to the Arkansas decree as such."

Defendant undertook an appeal from the view of the court (docketed here as No. 38,164), which this court concluded was premature, and the appeal was dismissed. (See 171 Kan. 120 to 125, 231 P. 2d 232.) Under date of January 2, 1951, the court addressed another letter to each of the attorneys in which he referred to what he had previously said concerning the decree rendered by the Arkansas court and said:

"As to the other matters I have checked the record and the files and I will grant the plaintiff an absolute decree of divorce to become final 6 months from date based on the grounds set forth in the petition. These parties having been married on the 23rd day of June, 1941 in Albuquerque, New Mexico and have remained since said time husband and wife.

"As to alimony there has never been a determination by any court of this matter. In my opinion plaintiff is entitled to alimony under her petition and under the facts as produced in the lawsuit, and I will at this time award her alimony in the sum of $30,000.00 payable at the rate of $250.00 per month."

There is a paragraph allowing attorneys' fees for plaintiff's attorneys, to which no objection is made here; also a paragraph allowing for fees and expenses of the receiver the sum of $2,000,

to which objection is made in this court. The court's letter advised the attorneys to prepare a journal entry accordingly. Defendant filed a motion for a new trial, which was considered by the court and overruled, and a journal entry covering all the rulings of the court and its judgment and decree in harmony with them was approved by the attorneys for both parties, signed by the court, and filed on February 25, 1952. Defendant has timely appealed.

We turn now to the legal questions presented here. Counsel for appellant contend that when the decree was entered in the chancery court of Garland County, Arkansas, on July 5, 1949, the marital status of the parties ended; that they were no longer husband and wife, and that the trial court in this action erred in granting the plaintiff a divorce by its final decree in this case. The point is well taken. Our pertinent statute (G. S. 1949, 60-1518) reads:

"A judgment or decree of divorce rendered in any other state or territory of the United States, in conformity with the laws thereof, shall be given full faith and credit in this state; except, that in the event the defendant in such action, at the time of such judgment or decree, was a resident of this state and had not been served personally with process, or did not personally appear or defend the action in the court of such state or territory, all matters relating to alimony, and to the property rights of the parties and to the custody and maintenance of the minor children of the parties, shall be subject to inquiry and determination in any proper action or proceeding brought in the courts of this state within two years after the date of the foreign judgment or decree, to the same extent as though the foreign judgment or decree had not been rendered."

The history and purpose of this statute is well set out in an article by Hal E. Harlan, then a state senator and a member of the Judicial Council, in the *Kansas Judicial Council Bulletin* of April, 1934 (page 5). It is partially set out in *Wear v. Wear,* 130 Kan. 205, 222, 285 Pac. 606, and referred to in *Kirby v. Kirby,* 143 Kan. 430, 55 P. 2d 356. Under this statute it has become and is the settled policy of this state to recognize foreign decrees of divorce as being effectual to terminate the marriage relation of the parties, if such decree is procured in harmony with the statutes of the state where rendered. In the trial court counsel for the plaintiff attacked the decree of the Arkansas court as not being in compliance with the Arkansas statute. That specific question was decided against the plaintiff in the court's letter to counsel of April 28, 1950, above quoted. The court used this language:

". . . during the time that this action was pending the defendant therein filed an action in the State of Arkansas *obtaining foreign service as provided by the Arkansas statute,* and a judgment was later obtained with no

appearance whatsoever by the plaintiff in the Sedgwick County Kansas action in said Arkansas proceedings. . . ." (Our italics.)

In the same letter to the attorneys it is to be noted that the court did not fail to give credence to the Arkansas divorce decree upon the ground that the proceedings there were not in harmony with the Arkansas statute, but did fail to give credence to it upon the ground that when the decree was rendered in Arkansas "there was an actual case pending in the state of Kansas." Counsel for appellant contend that is not a sound reason for failing to give credence to the Arkansas decree. We think this point is well taken. (See, *Omer v. Omer,* 108 Kan. 95, 193 Pac. 1064, and *Kirby v. Kirby,* 143 Kan. 430, 55 P. 2d 356, and authorities there cited.)

Counsel for appellant argue that since this action was brought for divorce and alimony, and since the marital status of the parties had been terminated before the final decree, and even before the trial of this action, that this action is not a proper action or proceeding within the meaning of our statute (G. S. 1949, 60-1518), and go forward and argue what they think would be the only proper procedure. This point is not well taken. Obviously the legislature did not pinpoint a specific procedure, no doubt for the reason that if they did so the question might arise in some other procedure than the specific one designated by the statute, in which a bad result would be obtained.

We think the purpose of this statute is clear. It applies to those situations where a married couple live in Kansas; they may or may not have property or minor children, but one of them gets dissatisfied with the marriage and wants a divorce. Perhaps he has reason to think he could not get one in this state if it were contested, or perhaps he has tried to get a divorce and failed, as was the case here; so he goes to another state and gets a divorce on constructive service in harmony with the laws of that state. Our statute provides that such a divorce shall be valid insofar as it dissolves the marriage relation, but unless the defendant in the action in the foreign state was personally served with summons in that state, or appeared there and actually litigated her or his property rights, the rights to alimony and custody and maintenance of minor children, if any, those questions can be litigated in this state in an appropriate proceeding commenced within two years.

We think that after the Arkansas court had granted a decree of divorce the district court of Sedgwick county had jurisdiction of the case to settle the claim of the plaintiff for alimony. The fact that

the court had jurisdiction does not mean that the court had to allow alimony, but it did have jurisdiction to hear the case and to enter a decree upon the question of alimony. Counsel for appellant contend that the decree in the Pratt county case dividing property and vesting the fee title to the property set off to the respective parties in them respectively, with full right to convey or otherwise dispose of the property so set off, precludes the right of the plaintiff to any additional allowance of property. We think this point is not well taken. There is a distinct difference between a division of property which simply determines the ownership of property between husband and wife and the allowance ·of alimony which primarily pertains to support and maintenance. The question was directly before this court in *Hardesty v. Hardesty,* 115 Kan. 192, 222 Pac. 102, where the syllabus reads:

"An order for the division of property made in pursuance to section 668 of the civil code where an application for a divorce by the husband was refused, did not preclude the granting of permanent alimony to the wife when several years afterwards a divorce was granted to the wife for the wrongs of the husband."

In the opinion the court used this language:

"A division of property is made while the marriage relation continues in existence and is in a sense a substitute for separate maintenance or temporary alimony. . . . The property set apart by the division was not alimony, which is a provision for the nourishment and support of the wife and children in the future."

We conclude that the power of the court to grant alimony was not lacking. As previously noted, the decree in the Pratt county case contained no provision respecting the parties living separate and apart from each other. As far as the decree is concerned the parties might have continued to live together as husband and wife, he owning certain property and she owning certain property. In this case the plaintiff testified that she would have been willing to have done so, and on one occasion had a talk with the defendant in which she so advised him.

The real question before us pertaining to alimony is whether under the facts of this case the court should have allowed alimony, and if so, in what amount. Since the question of alimony had not previously been determined it would be difficult to say that no alimony should have been allowed. In the Hardesty case between the time of the action for separate maintenance, when the court made a division of the property, and the time the divorce suit was

brought, in which the wife made a claim for alimony, the husband had inherited from his mother property of the value of $200,000. The trial court allowed her $10,000 as alimony. This was affirmed. No such situation appears in this case. At the time of the decree in this case defendant did not have as much property as he had at the time the division of property was made in the Pratt county case. He conveyed many tracts of his real property to his children by the former marriage. Perhaps the value of the property conveyed was about half of all the real property he owned at the time of the Pratt county decree. In the court below and here counsel for the plaintiff criticize severely the fact that defendant had conveyed some of his property. .There is no reason for that complaint. The Pratt county decree authorized such conveyances. Those conveyances were in the way of gifts of defendant to the grantees. He so reported them to the director of internal revenue and paid the federal gift tax on those conveyances in a sum in excess of $3,400. Notwithstanding these conveyances plaintiff in her petition listed all the land as being the property of defendant. This was inaccurate. And with respect to the land so conveyed the *lis pendens* notice and the attachment order were not justified.

Counsel for appellant contend that the appointment of a receiver was not justified and that appellant should not be compelled to pay $2,000 for the expenses and services of the receiver. We think the point is well taken. At the time the receiver was appointed *lis pendens* notices had been served upon all the land which defendant owned in this state, and all the land plaintiff owned in this state had been attached. There was no reasonable possibility that all the land owned by defendant in this state would not have been ample for the payment of any alimony award which the court might make.

Counsel for appellant point out that the parties had lived together as husband and wife only about four years; that no children were born to them; that in the division of property in Pratt county she received $35,000 in cash and the home in Pratt, then valued at $6,500 (which we are told she later sold for $13,500), and the furniture in the home; that prior to her marriage she had executed an antenuptial agreement, which the court found to have been fairly and intelligently executed, by which, in the event of defendant's death while she was living she would receive one-fifth of the property, then valued at about $160,000; that the division of property in the Pratt county case gave her substantially more than one-fifth

of the property, and further pointed out that in the Hardesty case the court made it clear that the former division of property should have been taken into account in allowing alimony. Other authorities are to the same effect. (See, *Black v. Black*, 200 Iowa 1016, 205 N. W. 970.)

Another matter to be taken into account in determining the amount of alimony allowed is the need of the wife for support and maintenance. We find nothing in the record on that subject. Perhaps it was taken for granted that the plaintiff had not lost or consumed the $35,000 in cash and the proceeds of the home which she received about three years earlier. However, all of these matters were of necessity before the trial court, but the amount of alimony allowed would indicate that they were not taken into consideration as much as should have been done. We are always reluctant to modify the amount of an alimony award made by the trial court, but under the record in this case it seems imperative. Our conclusion on this point is that the alimony allowed is excessive to the extent of at least $20,000 and should be reduced to $10,000, and that the plaintiff should be required to pay the $2,000 allowed by the trial court for the expenses and services of the receiver.

The result is the judgment of the trial court is modified in the following respects: (1) The divorce granted to the wife in this action is set aside for the reason that the divorce granted defendant by the chancery court of Garland County, Arkansas, on July 5, 1949, had already dissolved their marital relations. (2) That part of the judgment which required defendant to pay the $2,000 allowed the the receiver for his expenses and services is set aside and it is adjudged that the plaintiff should pay that sum—this for the reason that the receiver was improvidently appointed and his services were of no benefit to the plaintiff and were a detriment to defendant. (3) That part of the judgment awarding plaintiff $30,000 in alimony is set aside and in lieu thereof the plaintiff is awarded the sum of $10,000, payable by defendant as follows: $2,000 within thirty days after our mandate is filed of record in the trial court, and the remaining $8,000, less the sum, if any, paid thereon by defendant since January 2, 1952, the date of the judgment rendered in the court below, is to be paid at the rate of $250 per month, beginning thirty days after our mandate is filed in the trial court. In other respects the judgment of the trial court is affirmed.

It is so ordered.