No. 41,560.

MARTHA KING, *Appellant*, v. GEORGE W. KING, *Appellee*.

(347 P. 2d 381)

Opinion filed December 12, 1959.

*Frank Hahn*, of Phillipsburg, argued the cause, and *Geo. C. Wingerson*, of Hill City, was with him on the brief for appellant.

*W. H. Clark, Marion W. Chipman*, and *Kenneth Clark*, all of Hill City were on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in an action which was instituted by a California resident for alimony, separate maintenance and property division in the district court of Graham County, Kansas.

The underlying question is whether, on the facts and circumstances herein presented, a decree granting the wife a divorce in the State of California is entitled to full faith and credit.

Martha King, appellant herein and plaintiff below, was married to George W. King, appellee herein and defendant below. They are the same parties who appeared before this court in *King v. King,* 183 Kan. 406, 327 P. 2d 865. There both parties asked for a divorce and for a division of property in the district court of Graham County, Kansas. The trial court on September 24, 1957, denied a divorce and refused to make a division of the property. On appeal this court affirmed the judgment of the trial court.

On the 15th day of July, 1958, Martha, who had in the meantime moved to and had become a resident of California, filed an action in the district court of Graham County, Kansas, which is the matter here for consideration. Her petition was for alimony, separate maintenance and division of property.

Thereafter, but before any action was taken in this case, Martha filed an action for divorce in California. Service of summons in the California case was made upon George by the sheriff of Graham County, Kansas, in November, 1958. This was the equivalent of constructive service.

The next chronological event in the course of time was an answer and cross petition filed by George in the Graham County action on December 8, 1958. By his cross petition George requested a divorce from Martha.

On the 29th day of December, 1958, the California court entered a decree granting Martha a divorce by default. (Under California law the divorce decree does not become final for one year.)

On the 22nd day of January, 1959, Martha replied and answered the cross petition of George by setting forth the California divorce decree and requested the district court in Graham County to determine all property rights and indebtedness in Kansas pursuant to G. S. 1949, 60-1518.

George thereupon filed his motion to strike those portions of

Martha's answer and reply setting forth the divorce decree in California and the request for a determination of property rights and indebtedness in Kansas. The trial court pursuant to this motion struck the paragraph of Martha's answer and reply setting forth the California divorce decree and the request for a determination of the property rights of the parties. It is from this order that Martha appeals.

In ruling upon a motion to strike, the facts alleged must be taken as true. (See, *Turner v. Benton,* 183 Kan. 97, 325 P. 2d 349.) Therefore, for purposes of this appeal, it must be assumed that the facts recited in the answer and reply of Martha, which were stricken by the trial court, were true—that Martha was a resident of California, that the California court had jurisdiction and duly entered a decree divorcing Martha from George on the 29th day of December, 1958.

It is clear under Kansas law that the action filed by Martha in Graham County, Kansas, pursuant to G. S. 1949, 60-1516, is an entirely different cause of action from one of divorce. (*Wohlfort v. Wohlfort,* 116 Kan. 154, 225, Pac. 746; *Kraus v. Kraus,* 171 Kan. 254, 232 P. 2d 233; *Schaeffer v. Schaeffer,* 175 Kan. 629, 266 P. 2d 282; and *Jeffers v. Jeffers,* 181 Kan. 515, 313 P. 2d 233.) Under the circumstances, Martha being a resident of California could not have filed an action for divorce in Kansas by reason of the lack of residency. (*Asling v. Asling,* 88 Kan. 331, 128 Pac. 185; *Long v. Long,* 113 Kan. 459, 214 Pac. 1116; and *Wible v. Wible,* 153 Kan. 428, 110 P. 2d 761.) She was free to file an action for divorce in California after she had filed her petition in Kansas for alimony, separate maintenance and division of property.

The recognition which the courts of one state can be compelled to give to a divorce decree rendered by a court of a sister state depends upon what is decided upon the subject by the Supreme Court of the United States under Article 4, Section 1 of the Constitution of the United States, providing that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

There are several leading cases on the question of the recognition which the Constitution demands, where the divorce decree is rendered at the domicile of *one party only.* (*Atherton v. Atherton,* [1901] 181 U. S. 155, 45 L. Ed. 794, 21 S. Ct. 544; *Haddock v. Haddock,* [1906] 201 U. S. 562, 50 L. Ed. 867, 26 S. Ct. 525; and *Davis v. Davis,* [1938] 305 U. S. 32, 83 L. Ed. 26, 59 S. Ct. 3.)

On the facts presented in the instant case *Haddock v. Haddock,* supra, is in point. There the parties were married in New York where both lived at the time. The husband went to Connecticut, established his domicile there, and secured a divorce in that state, the absent wife being served by publication only. Later the wife brought a separation suit against Haddock in New York. He set up, in defense, the decree he had received in Connecticut. This was rejected by the court in the New York proceedings. Upon appeal to the United States Supreme Court, it was held that there was no violation of the requirement of full faith and credit. It is important to note the *Atherton* decision, decided five years earlier in 1901, reached the contrary conclusion on the ground that the divorce which was denied full faith and credit by the sister state was granted at the *matrimonial domicile* of the husband and wife. In the *Haddock* case it was not. Mr. Justice Holmes dissented in the *Haddock* case. He said: "I cannot see any ground for distinguishing between the extent of jurisdiction in the matrimonial domicil and that, admitted to exist to some extent, in a domicil later acquired." He prophesied: "I think that the decision not only reverses a previous well-considered decision of this court but is likely to cause considerable disaster to innocent persons and to bastardize children hitherto supposed to be the offspring of lawful marriage."

The *Haddock* decision did not decide that New York or any other state could not recognize the Connecticut decree. It was expressly said that Connecticut could divorce the husband, a citizen of Connecticut, and that decree would be effective in that state. What the court did hold was that the full faith and credit clause did not compel recognition by New York.

Actually the decisions of the state courts have not been very greatly affected by the *Haddock* decision. That the decree of the court at one party's domicile should be recognized was the majority view of the state courts prior to the decision in the *Haddock* case, and has continued to be the prevailing doctrine since. The minority of the states which refused to recognize the foreign decree given under the same circumstances as that in the *Haddock* case continued to do so. It was thus a doctrine of comity in such situations and not the full faith and credit clause of the Federal Constitution which enjoined upon the several states the duty of recognizing and giving effect to the divorce decrees based upon constructive service, when the decree was obtained in conformity with the law of the state in which the judgment was rendered.

Immediately following the *Haddock* decision the following statute, which took effect March 21, 1907, was enacted in Kansas:

"Any judgment or decree of divorce rendered upon service by publication in any state of the United States in conformity with the law thereof shall be given full faith and credit in this state, and shall have the same force with regard to persons now or heretofore resident or hereafter to become a resident of this state as if said judgment had been rendered by a court of this state, and shall, as to the status of all persons, be treated and considered and given force the same as a judgment of the courts of this state of the date which said judgment bears." (Laws of 1907, Ch. 184, § 1.)

The first case to be decided by the Supreme Court of this state after the passage of the above statute was *McCormick v. McCormick*, 82 Kan. 31, 107 Pac. 546, wherein Mr. Justice Burch speaking for the court graphically described the effect of the *Haddock* decision. At page 43 of the opinion it is said:

"The decision in *Haddock v. Haddock* was rendered on April 12, 1906. It immediately arrested public attention throughout the nation, and, whether warranted or not, great anxiety was felt in many quarters respecting the social consequences which might follow from it. For the purpose of averting any possible disaster, due either to the decision itself or to misapprehension of its doctrine, and for the purpose of establishing the law and policy to be observed by the courts of this state, the legislature enacted the following statute, . . . [Laws of 1907, Ch. 184, § 1.]

*"It is perfectly clear that this statute was intended to make the recognition and enforcement of foreign divorce decrees based upon substituted service obligatory in this state.* The option left by the decision in *Haddock v. Haddock* to each state to give to such decrees within its own borders whatever efficacy they may be entitled to, consistent with its public policy, was exercised by the legislature, and such decrees were placed upon the same basis as the judgments of our own courts . . ." (Emphasis added.)

By the foregoing statute Kansas went far beyond all other states of the union in compelling recognition of foreign decrees of divorce based upon constructive service.

By amendment (Laws of 1935, Ch. 220, § 1) the evils which were prone to occur under the foregoing section of the statute were corrected. The amended statute, now appearing as G. S. 1949, 60-1518, provides:

"A judgment or decree of divorce rendered in any other state or territory of the United States, in conformity with the laws thereof, shall be given full faith and credit in this state; except, that in the event the defendant in such action, at the time of such judgment or decree, was a resident of this state and had not been served personally with process, or did not personally appear or defend the action in the court of such state or territory, all matters relating to alimony,

and to the property rights of the parties and to the custody and maintenance of minor children of the parties, shall be subject to inquiry and determination in any proper action or proceeding brought in the courts of this state within two years after the date of the foreign judgment or decree, to the same extent as though the foreign judgment or decree had not been rendered."

After quoting the foregoing statute in *Fincham v. Fincham,* 174 Kan. 199, 255 P. 2d 1018, the court stated:

"The history and purpose of this statute is well set out in an article by Hal E. Harlan, then a state senator and a member of the Judicial Council, in the *Kansas Judicial Council Bulletin* of April, 1934 (page 5). It is partially set out in *Wear v. Wear,* 130 Kan. 205, 222, 285 Pac. 606, and referred to in *Kirby v. Kirby,* 143 Kan. 430, 55 P. 2d 356. *Under this statute it has become and is the settled policy of this state to recognize foreign decrees of divorce as being effectual to terminate the marriage relation of the parties, if such decree is procured in harmony with the statutes of the state where rendered . . ."* (p. 207.) (Emphasis added.)

The *Haddock* case has since been overruled in *Williams v. North Carolina,* 317 U. S. 287, 87 L. Ed. 279, 63 S. Ct. 207. See, also, the second chapter of the *Williams* case, 325 U. S. 226, 89 L. Ed. 1577, 65 S. Ct. 1092. This does not, however, affect our legislative history or mandate and the law in Kansas has not been changed by this subsequent decision of the United States Supreme Court, except that foreign divorce decrees in the situation of the *Haddock* case must now be given full faith and credit under the Federal Constitution.

It was recognized in *Omer v. Omer,* 108 Kan. 95, 193 Pac. 1064, and supported by ample authorities, that the pendency of an action in the court of one state is not a bar to the institution of another action between the same parties and for the same cause of action in a court of another state, nor is it the duty of the court in which the latter action is brought to stay the same pending a determination of the earlier action, even though the court in which the earlier action is brought has jurisdiction sufficient to dispose of the entire controversy.

It is settled in this jurisdiction that a divorce decree rendered in any other state or territory of the United States is *res judicata* as to the question of divorce in Kansas. This point of law was presented in *Kirby v. Kirby,* 143 Kan. 430, 55 P. 2d 356, where the court said:

"Neither is it of consequence that before the action in the supreme court of the District of Columbia was finally determined, an action in Kansas was filed for the same relief, in which personal service was obtained. The pendency of the first action was not a bar nor a cause for stay of the proceedings

in this state, and had its judgment been rendered before judgment was rendered in the D. C. court, it would have been good. (*Omer v. Omer*, 108 Kan. 95, 193 Pac. 1064.) But the fact that an action was pending in Kansas at the time the judgment was rendered in the D. C. court did not prevent that judgment from being pleaded as *res judicata* in Kansas. (*U. P. Rly. Co. v. Baker*, 5 K. A. 253, 47 Pac. 563.) And the weight of authority in other jurisdictions is to the same effect. In 9 R. C. L. 374 (Divorce and Separation, § 164), it is said:

"'A valid decree of divorce rendered in another jurisdiction than that in which the subsequent decree is sought is a bar to the subsequent proceedings. *And the general rule applies also where the decree of divorce was rendered in proceedings instituted after the proceedings were commenced in which it is sought to be availed of as a defense. Such a case is simply one of concurrent jurisdiction in the courts of two states, and the judgment or decree first rendered dissolving the marriage relation concludes the question in the court of the other jurisdiction.* The foreign decree of divorce must, however, have been a valid decree of divorce, entitled to full faith and credit in the jurisdiction in which the subsequent decree is sought.'" (p. 438.) (Emphasis added.)

In *Fincham v. Fincham*, supra, a married couple lived in this state and had property here. After considerable litigation the wife filed a petition for divorce in this state and prior to the service of summons upon the husband, either by personal service or constructive service, the husband, who had established a residence in the State of Arkansas, filed a petition for divorce in that state where he procured a decree of divorce from his wife on constructive service in harmony with the laws of that state. The court held the Arkansas decree was entitled to full faith and credit in this state and had the effect of dissolving the marital relations between the parties, *irrespective of the fact that at the time the decree of divorce was rendered in Arkansas the wife had pending in a court of this state an action for divorce and alimony.*

It was also held in *Willoughby v. Willoughby*, 178 Kan. 62, 283 P. 2d 428, where a married couple lived in this state and had property here, that a Nevada divorce decree procured by the husband from his wife upon constructive service in harmony with the laws of that state was entitled to full faith and credit in this state insofar as it had the effect of dissolving the marital relations between the parties. The wife's action in this state pursuant to 60-1518, *supra,* for alimony and a division of property empowered the trial court of this state to adjudicate alimony and property rights to the same extent as though the foreign decree had never been entered, and the court was not called upon to determine the question or the merits of the divorce.

Mindful in the instant action that Màrtha sought only alimony, separate maintenance and a division of property, which is an entirely different cause of action from one of divorce, the facts are analogous to those in the *Fincham* case.

The appellee relies on *Hepner v. Hepner*, 115 Kan. 647, 223 Pac. 1095, where the wife instituted an action for alimony and the husband went into Oklahoma, secured a divorce from his wife, and pleaded the Oklahoma divorce as a bar to the action for alimony. It was held the Kansas court having prior jurisdiction of an action by a wife against her husband for alimony could not be ousted of its jurisdiction over the parties and subject matter by the institution of a later action in another state by the husband against the wife for a divorce, nor because such later action proceeds to judgment by default in the husband's favor. It was said the judgment in Oklahoma was not a bar to the wife's prior action for alimony where the wife did nothing to abandon her right to litigate her cause to a conclusion in a court of prior jurisdiction.

When the *Hepner* case was decided in 1924 the court was attempting to relax the rigor of 60-1518 as it existed prior to 1935 as construed in *McCormick v. McCormick*, supra. Although the *Hepner* opinion did not mention the statute, it brushed off the *McCormick* decision as not being in point because the Missouri court which granted the divorce had prior jurisdiction. After the amendment of 60-1518 in 1935, the Oklahoma decree in the *Hepner* case could have been given full faith and credit and the wife could also have maintained her action for alimony in Kansas. The theory upon which the *Hepner* case was decided has not been followed in cases involving a foreign divorce decree after the amendment of the statute. (See, *Kirby v. Kirby*, supra; and *Fincham v. Fincham*, supra.)

In conclusion we hold that the question of divorce between Martha and George is determined by the California divorce decree, if supported by evidence, it being entitled to full faith and credit, and the district court of Graham County has authority in the original action filed by Martha for alimony, separate maintenance and a division of property to hear and determine all questions as to property rights and indebtedness of the parties in Kansas pursuant to 60-1518, *supra*, without the filing of a new and separate petition.

In the *Fincham* case it was held that the wife was entitled to be heard as to her rights for alimony in any proper action or proceeding brought within two years after the decree of divorce in the

Arkansas case. The court further held that her pending action for divorce and alimony was such a proper action or proceeding within the meaning of 60-1518, *supra,* to determine these matters, saying:

". . . Obviously the legislature did not pinpoint a specific procedure, no doubt for the reason that if they did so the question might arise in some other procedure than the specific one designated by the statute, in which a bad result would be obtained." (p. 208.)

Either party may proceed under the provisions of G. S. 1949, 60-1518, where a divorce decree entered in another state is given full faith and credit and the conditions of this section of the statute are otherwise fulfilled. A proper action or proceeding in Kansas is not limited to the defendant in the foreign action. The provisions of the statute were construed in *Stricklin v. Snavely,* 175 Kan. 253, 262 P. 2d 823, where it was held that a wife who obtains a valid decree of divorce in conformity with the laws of another state on publication service only, in which action her husband then residing in Kansas did not personally appear or defend, is not precluded from instituting an action in Kansas to have her own individual interest in property set aside to her, where the property was accumulated by the parties during the marriage relationship as a result of their joint efforts and title thereto is held by them jointly. While the wife's action in Kansas was not brought within the two-year limitation period in the statute, the court said she could have maintained it under the statute within the two-year period for such relief as the statute authorizes.

In the instant case the judgment of the trial court was invoked on questions of law as applied to the well-pleaded facts attacked by the motion to strike. For this purpose the well-pleaded facts alleged in Martha's answer and reply must be taken as true and a court is not justified in reaching out to make additional facts a part of the pleadings under attack. (*Wendler v. City of Great Bend,* 181 Kan. 753, 316 P. 2d 265; *White v. Thompson,* 181 Kan. 485, 312 P. 2d 612; see, also, *Whitaker v. Douglas,* 177 Kan. 154, 277 P. 2d 641; *Geier v. Eagle-Cherokee Coal Mining Co.,* 181 Kan. 567, 313 P. 2d 731; and *Wahl v. Walsh,* 177 Kan. 176, 277 P. 2d 623.) An order sustaining a motion to strike is appealable as a final order if it in effect deprives the defending party of a meritorious defense which, if supported by evidence, would defeat all or part of the petitioner's cause of action. (*Boettcher v. Criscione,* 180 Kan. 39, 299 P. 2d 806; *Wendler v. City of Great Bend,* supra; and cases cited therein.)

We therefore hold the trial court erroneously struck a meritorious defense from Martha's answer and reply in the instant case which, if supported by evidence, would defeat the cross petition of George alleging a cause of action for divorce from Martha. This is an appealable order. (*In re Estate of Reed,* 157 Kan. 602, 142 P. 2d 824; *Atkinson v. Sowersby,* 165 Kan. 678, 198 P. 2d 158; and *White v. Thompson,* supra.)

The judgment of the lower court is reversed.

PARKER, C. J., not participating.