No. 39,496

RETTA BURNS (BORCHARDT), *Appellant,* v. WALTER W. BURNS, *Appellee.*

(276 P. 2d 308)

Opinion filed November 13, 1954.

*Fred Swoyer,* of Belleville, was on the briefs for the appellant.

*Charles A. Walsh,* of Concordia, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This appeal is from an order of the district court changing the custody of a child from plaintiff to defendant. The pertinent facts may be stated as follows:

Defendant entered the Army Air Force during the second World War; soon thereafter he was married to plaintiff who was his childhood sweetheart; to this marriage a child, William W. Burns, Jr., was born November 14, 1945. Defendant remained in the air force after the war and was moved around from time to time and place to place. During the Korean War he was in service overseas and was gone for 19 months. Upon his return his wife filed an action for divorce against him. We are told that the action was bitterly contested and that the trial took three days. At the close of the trial, November 19, 1952, the parties were divorced; plaintiff was given custody of the child but the decree provided the plaintiff, "was spe-

cifically prohibited from taking this child from the jurisdiction of the trial Court." Defendant was required to pay $50 per month to the clerk of the court to be paid plaintiff for the support of the child. At the time of the divorce defendant was stationed at Hensley Field near Dallas, Texas.

In April, 1953, defendant filed a motion for an order directing plaintiff to advise him of the whereabouts of the child and was informed that the child was in Wayne (Republic county), Kansas, within the court's jurisdiction. In August, 1953, defendant filed a motion to impound payments for support of the child because he did not know where the child was at that time and an order was made that the clerk should suspend further disbursements to plaintiff until defendant should be informed of the whereabouts of the child. On November 13, 1953, defendant filed a motion requesting the court to award the custody of the child to him. This motion was set for hearing on November 18, 1953. On November 17, 1953, plaintiff, by her attorney who represents her here, filed a verified motion for a continuance. In that motion the court was advised that plaintiff's attorney had been employed by telegram November 14, 1953; that plaintiff was in Anchorage, Alaska; that her attorney was unfamiliar with the facts, and that it was necessary that plaintiff be granted a continuance so she could be properly represented. This motion came on for hearing November 18, 1953. At that time counsel for defendant stated to the court that he was not going to press the matter for a complete formal hearing but advised the court that he had subpoenaed two witnesses and suggested their testimony might be taken. The court stated:

"Since the witnesses are here, the Court sees no reason why their evidence should not be taken. There will be no action taken today on the motion for change of custody. The defendant may call the witnesses subpoenaed this morning and the evidence will be preserved until plaintiff's attorney has had proper time to consult with his client and the Court hears the whole matter."

These witnesses were the father and mother of plaintiff. The substance of their testimony was that the plaintiff had married a Mr. Borchardt; that they were living at Anchorage, Alaska; and, that the minor child was with her in Anchorage. At the conclusion of the testimony the court stated:

"The matter of the motion for continuance will be granted. If there is any time convenient to the parties, the Court will be glad to hear it then."

Counsel for defendant stated:

"I think we'd better leave the matter open, your Honor. Mr. Swoyer here

is probably in need of a little time and my man of course is in Texas, and I will need some consultation, too."

Nothing more was done with the matter until December 11. In the meantime plaintiff's attorney had written defendant's attorney that it was his intention to take depositions in Anchorage, Alaska, and that arrangements were being made for that purpose. Upon the receipt of that letter defendant's attorney requested the court to hear further argument which was done on December 11. At that time counsel for defendant called to the attention of the court that plaintiff had taken the child out of its jurisdiction, which fact constituted contempt of court, and urged that the court make an order striking from the record the right of the mother to have the custody of the child until she purged herself of contempt. Counsel for plaintiff argued that even though the mother might be in contempt that question was not then before the court, the real question was what is the best welfare of the child. He further advised the court that steps had been taken to inquire into that matter; that he had advised plaintiff to consult with an attorney there which he was informed she had done; that plans were being made to have the social welfare department in Anchorage make an investigation and report; that counsel for plaintiff had not been advised the name of the attorney consulted by plaintiff and was not in a position to serve notice to take depositions. There was further argument before the court and the matter was taken under advisement. There was some further argument before the court on December 14, and on December 22, 1953, the court made the following memorandum decision:

"On November 18, 1953, defendant presented his motion for change of custody, and plaintiff presented her motion to make more definite and certain, the parties being present by their attorneys of record. The defendant introduces testimony and rests. The plaintiff introduces no evidence. The matter is taken under advisement. Further argument was had on said motion on December 11, 1953, and the matter again taken under advisement. Now, on December 14, 1953, plaintiff presents her motion to strike, and the matter is again taken under advisement.

"The motion to strike and to make more definite and certain are hereby overruled.

"The testimony discloses, and it is conceded by the plaintiff, that said plaintiff removed the minor child from the jurisdiction of this Court, contrary to the express orders of said Court. It appears that plaintiff took said child to Anchorage, Alaska, where she is now remarried and making her home. This action on the part of the plaintiff is plainly contemptuous; however, the plaintiff is not before the Court on a contempt charge, but upon a motion for change

of custody. The contempt matter is unimportant at this time except as it bears on the change of custody matter. The welfare of the child, unquestionably, is the paramount consideration of the Court. The contemptuous action of the plaintiff then becomes important in relation to the fitness of the plaintiff to retain custody of said minor child. Has the status, condition, or circumstances, as affecting the welfare of the child, changed since the order granting custody to the plaintiff was made? This question must be answered in the affirmative. A child should not be subject to an environment lacking respect for law and order, and he should not be in constant association with persons who deliberately attempt to, and do, circumvent legal process. To this extent, the circumstances and conditions of the parties have been so altered as to make a change in custody advisable.

"Therefore, the custody of said minor child is hereby granted to the defendant, and the order, heretofore made, granting custody of said child to the plaintiff, is hereby set aside and vacated. Costs are assessed to the defendant.

"Dated in Chambers this 22d day of December, 1953, at Concordia, Cloud County, Kansas."

The plaintiff has appealed from the above order. Her counsel contends that it was error for the trial court to make an order changing the custody of this child from plaintiff to defendant without hearing any evidence pertaining to how the child is getting along now, and without any evidence as to where or how the defendant could care for him if he had the custody. The point is well taken.

Beginning with the early cases written by Justice Brewer of *In re Bort, Petitioner, &c.,* 25 Kan. 308; *Chapsky v. Wood,* 26 Kan. 650, and *In re Bullen, Petitioner, &c.,* 28 Kan. 781, 785, and subsequent down to our later cases of *Roll v. Roll,* 143 Kan. 704, 56 P. 2d 61; *Janney v. Janney,* 159 Kan. 230, 154 P. 2d 131; and *Prier v. Lancaster,* 169 Kan. 368, 219 P. 2d 358, it has been repeatedly held when a controversy arises as to the custody of a minor child the primary question to be determined by the court is what is for the best interest of the child. All other questions are secondary.

When parents are divorced and the custody of their child is given to one of them, and the other moves to have the custody changed to the movant, the court cannot know what is for the best interest of the child unless he hears evidence with respect to how the child is cared for and getting along with the parent to whom the custody was first given, and before such custody is changed the party seeking the change of such custody should be able to show that the child can be better cared for if the change requested is granted.

In this case in the motion for the change of custody there is no suggestion as to where the child will be kept or who would have

the actual care of the child if the motion was allowed, neither is there anything of that nature suggested in the arguments of defendant's counsel before the court as shown by the abstracts before us. The court did not take time to get any information on that suggestion. Counsel for plaintiff was making preparations to furnish that evidence with respect to plaintiff and the child. Time to do so should have been given. The court made the order solely because of the apparent contempt of plaintiff in removing the child from the jurisdiction of the court. This was not a hearing on an accusation of contempt against plaintiff and if it were she should have been advised and given an opportunity to present any explanation or excuse which she would have to offer. It is possible that she might have evidence tending to show that she had no real desire to be contemptuous with the order of the court. However, it is futile to speculate upon these matters but even if she were contemptuous in that respect there is no reason to change the custody of the child to defendant unless the defendant is shown to have a place and facilities for caring for the child as good or better than the plaintiff is providing. Certainly, it would do no good to bring the child back into the jurisdiction of the court with the mother many miles on one side of him and the father many miles on the other. The child is entitled to grow up as a normal child should and without being mentally disturbed and upset every few months by action on behalf of the parent who was not given custody and who has no place to care for him.

From what has been said it seems clear that the judgment of the trial court changing the custody of the child from plaintiff to defendant should be set aside. It is so ordered.