SANDRA L. PERRENOUD, *Appellee*, v. DANIEL A. PERRENOUD, *Appellant*.

No. 45,958

DANIEL A. PERRENOUD, *Appellee*, v. SANDRA L. BROWN, formerly SANDRA L. PERRENOUD, *Appellant*.

(480 P. 2d 749)

560

filed February 3, 1971.

*James D. Howell, Sr.,* of Howell & Howell, of Overland Park, argued the cause, and *James D. Howell, Jr.,* of the same firm, was with him on the brief for appellant in appeal No. 45,597, and appellee in appeal No. 45,958.

*John H. Fields,* of Carson, Mahoney & Fields, of Kansas City, argued the cause, and *David W. Carson,* of the same firm, was with him on the brief for appellee in appeal No. 45,957 and appellant in appeal No. 45,958.

The opinion of the court was delivered by

FATZER, J.: These two appeals involve the care and custody of two little girls five and seven years of age. The appeal from Johnson district court (No. 45,958) was perfected by the mother, from the judgment granting the father's petition for a writ of habeas corpus for the custody and control of the two children. The appeal from Wyandotte district court (No. 45,957) was perfected by the father, from the judgment granting the mother a divorce and awarding the care and custody of the children to the mother.

The parties will be referred to by their given names, Sandra, the mother, and Daniel, the father. In referring to the district court judges, reference is made to the Honorable William J. Burns, judge of division No. 2 of the Wyandotte district court, as Judge Burns, and to the Honorable Raymond H. Carr, judge of division No. 3 of the Johnson district court, as Judge Carr.

Sandra and Daniel are young people in their twenties. Sandra was raised by her uncle and aunt, Mr. and Mrs. James C. Comte, 1954 North 28th Street, Kansas City, Kansas, who occupied the relationship of foster parents.

On September 3, 1960, Sandra and Daniel were married at Miami, Oklahoma. On March 22, 1962, a divorce was granted to Sandra from Daniel by the Circuit Court of Jackson County, Missouri. Later that same year, and on August 29, 1962, Sandra and Daniel were remarried in Kansas City, Missouri. On November 8, 1962, their eldest daughter, Georgia, was born. Sixteen months later, and on March 15, 1964, their youngest daughter, Victoria, was born.

The parties continued to reside in Kansas City, Missouri, until October 2, 1965, when Sandra and Daniel separated. Daniel moved to California and secured employment. In November 1965, Sandra filed a divorce action against Daniel in the Circuit Court of Jackson County, Missouri, which she later dismissed. Shortly thereafter,

Sandra and the two children moved into the Comte home in Wyandotte County. In February 1966, the Comtes took the two children to Daniel in California without notice to, or the consent of, Sandra.

On November 1, 1966, Daniel filed suit for divorce from Sandra in the Superior Court of Los Angeles County, California. Daniel's verified complaint alleged statistical facts that the parties were married September 3, 1960 (the parties' first marriage in Oklahoma), and were separated October 2, 1965. Two causes of action were alleged. The first, that Sandra willfully deserted and abandoned Daniel, and continued to live apart from him without just cause and against his will and without his consent. The second, that Sandra treated Daniel with extreme cruelty. The relief sought was that "the bonds of matrimony heretofore and now existing between the parties be dissolved." Further, that the care and custody of the two minor children be awarded to Daniel. Service of summons by publication was obtained on Sandra in California, and on January 13, 1967, she was personally served with a copy of the summons and divorce complaint at 615 W. 39th Terrace, in Jackson County, Missouri.

On February 27, 1967, Sandra wrote Daniel's lawyer in California concerning the divorce proceedings, stating:

"You are handling a divorce action for Daniel A. Perrenoud. It was filed November 1, 1966. I would like to know if this action is going through, if so when is it to be completed? Or has your client dropped the case? It is most important that I know. Would you please reply?"

The letter was signed, "Mrs. Daniel A. Perrenoud, 615 W. 39th St. Terr., Kansas City, Missouri."

On March 3, 1967, an interlocutory judgment of divorce was granted Daniel by default, and the care and custody of the two minor children was granted to him with the right of reasonable visitation by Sandra. On that same day, March 3, 1967, Daniel's lawyer wrote Sandra advising her of the interlocutory divorce decree; that custody of the two minor children was awarded to Daniel, and that within one year Daniel would be able to obtain a final decree. Counsel warned Sandra against remarrying within the statutorily prohibited time and until a final decree was entered.

On April 15, 1967, and less than a month and a half after the interlocutory decree was granted by the California court, Sandra married Robert V. Brown. On May 27, 1967, a daughter was born to Sandra and Brown.

During the summer months of 1966, 1967 and 1968, at the request of the Comtes and with Daniel's consent, the two children were returned to the Comte home in Kansas City and Sandra visited the children in the Comte home. At the end of the summer vacation each year the children were returned to Daniel in California.

On September 4, 1968, and upon Daniel's application, the California court entered a final judgment of divorce. The decree provided "that plaintiff be and is granted a final judgment of divorce from defendant and that the bonds of matrimony between plaintiff and defendant be, and the same are, dissolved." The final decree awarded custody and control of the minor children to Daniel with the right of visitation by Sandra at reasonable times. On December 14, 1968, Daniel remarried in California.

All dates hereafter stated refer to the year 1969, except as is expressly noted.

On June 12, Sandra went to Los Angeles, employed counsel to represent her, and filed her declaration or application to modify the California decree of divorce as to the custody of the minor children, alleging a change in circumstances and conditions. Sandra's declaration also sought a change in the visitation rights or privileges whereby each summer commencing on the day following the end of the school term in June and continuing until the first day of September, the children would be delivered to her at a ·prearranged time and date, and alleged that she would deliver the children to Daniel at a prearranged time and date on or before September 1, of each year. Sandra also asked the court to appoint an investigator to determine which parent should have the care, custody and control of the children, and that the hearing be continued to a future date for decision. Daniel's declaration in opposition to Sandra's application alleged he had offered her three weeks unrestricted visitation with the children at her home in Johnson County commencing on a date after summer school ended in Redondo Beach, which offer was rejected by Sandra but that the offer was still available to her.

On June 5, and prior to Sandra's going to California to file a motion to modify the California decree, she and Brown were remarried in Wyandotte County.

On June 24, Sandra's application to modify the divorce decree and Daniel's declaration in opposition thereto were heard by the California court. Sandra and Daniel personally appeared together

with their respective counsel. The California court sustained Sandra's application for visitation privileges and authorized her to take the youngest child, Victoria, with her to Johnson County, and ordered that the older child, Georgia, be sent to Johnson County when she finished her summer school program on or about July 25. The order directed that both children be returned by Sandra to Daniel in California on or before August 27. In addition, the court appointed an investigator to determine which parent should have the custody of the minor children, and a hearing thereon was continued to a future date.

On June 25, Sandra took Victoria to her home at 5213 Alder Drive, Shawnee Mission, Kansas, and on or about July 25, she went to California and brought Georgia to her home in Shawnee Mission.

On August 22, Sandra filed a petition for divorce from Daniel in the district court of Wyandotte County, and sought the care and custody of the two minor children. She alleged the dates of her two marriages to Daniel and her divorce in Jackson County, Missouri, from their first marriage on September 3, 1960. She further alleged the California decree divorced the parties only insofar as their Oklahoma marriage of September 3, 1960, was concerned, and in effect it did not dissolve their second marriage in Kansas City, Missouri on August 29, 1962. She obtained an *ex parte* order granting her protective custody of the two minor children. Service of summons was sought upon Daniel in California, but was returned unserved.

On or about August 25, Daniel telephoned Sandra at her home at 5213 Alder Drive, Shawnee Mission, to inquire on what flight the two children would be returned to him in California. Sandra advised him she was not permitting the children to return.

On the same day, August 25, Sandra enrolled Georgia and Victoria in Roeland Park Elementary School in Johnson County. The children were enrolled under the name of Brown and their home address was shown as 5213 Alder Drive. Sandra's home was about four blocks from the Roeland Park School, and under the item "Transportation" the enrollment card stated the children would walk to the school. Georgia started to the Roeland Park school on August 28, and Victoria commenced kindergarten on September 2.

On September 2, and armed with the California decree, Daniel came to the Kansas City area and attempted to secure possession of his two daughters. He went to the Roeland Park Elementary School,

picked up Georgia, and took her to his father's home in Jackson County, Missouri. In seeking to locate Victoria, he went to the Comte home and was advised Victoria was not there. He called Sandra at her home in Shawnee Mission to inquire as to the whereabouts of Victoria. He advised Sandra he had picked up Georgia at the school. Shortly thereafter, four police cars of the Kansas City, Kansas, police department arrived at the Comte home and took Daniel to the police department where he was placed in jail and held until a deputy sheriff served him with process in the divorce action which had been filed by Sandra on August 22. He was thereafter released without charge. On advice of counsel, and on the same day, September 2, Daniel returned Georgia to Sandra.

On September 12, Daniel commenced the habeas corpus action in Johnson County and a writ was issued. On the following day, service was made upon Sandra at 5213 Alder Drive.

The minor children continued to attend the Roeland Park school, but after September 13, Sandra took them out of the Roeland Park school and enrolled them in a school in Wyandotte County. There was evidence that when the divorce action was filed, Sandra temporarily separated from Brown and went to live with her foster parents at 1954 East 28th Street, Wyandotte County, and that Brown went to live with his mother in Kansas City, Kansas. There was also evidence that Sandra or the Comtes made at least three or four trips a day in an automobile to transport the children from the Comte home on North 28th Street to and from the Roeland Park school until their enrollment in school in Wyandotte County.

On September 22, Daniel filed a motion to dismiss Sandra's divorce action and to set aside the *ex parte* order issued on August 22. The motion was lengthy and alleged that the Wyandotte district court did not have jurisdiction of the subject matter inasmuch as the parties were lawfully divorced on March 8, 1967, in the Superior Court of Los Angeles, which decree was made final on September 4, 1968; that the decree and judgment of the California court was entitled to full faith and credit and a true copy of the proceedings authenticated under the Acts of Congress was attached; that Sandra did not allege that conditions had changed insofar as the custody of the minor children was concerned between June 24, and August 22, the date the divorce petition was filed; that the matter sought to be litigated was *res judicata* in that the same subject matter was litigated to finality in the California court, which judgment

had not been set aside, reversed or modified; that Sandra was estopped to deny the decree of the California court in that she acquiesced in the same and recognized its validity by remarrying Brown in Wyandotte County on June 5, after the entry of final judgment, and by her appearance in the California court a short time thereafter through the process of her declaration for modification of her rights of visitation, and, further, by the fact that in the previous summers the children were permitted to return to Kansas and reside in the home of her foster parents where Sandra visited them.

Daniel further alleged that the filing of Sandra's declaration for modification in the California court was the perpetration of a fraud by her on that court, and the filing of the divorce action was the perpetration of a fraud on the Wyandotte district court in that she filed her declaration to modify the California decree solely for the reason of removing the children from California to Kansas, and that the filing of the divorce action was fraudulent in that Sandra had never abandoned her residence and domicile in Johnson County, and had not established a domicile in Wyandotte County, and that the two minor children on August 22, or thereafter, were not domiciled and did not reside in Wyandotte County but were enrolled in the public schools in Johnson County. Daniel further alleged, "[t]hat the acts of the plaintiff combined to perpetrate a fraud on both the California and the Kansas courts."

On September 25, a partial hearing was held before Judge Carr on the habeas corpus action. Upon being advised that Daniel's motion to dismiss the divorce action would be heard by Judge Burns the following day, September 26, Judge Carr continued the hearing on the habeas corpus action to September 29.

On September 26, the motion to dismiss the divorce action was partially argued before Judge Burns. He advised he would make an independent investigation on the question of the residence of Sandra and the children and would rule on the motion the same day. The record indicates Judge Burns directed the probation officer of his court to take statements of Sandra's witnesses, which was done that day. Thereafter, the probation officer made his report to Judge Burns, who concluded Sandra was a resident of Wyandotte County on August 22, and overruled the motion to dismiss.

On September 29, a full hearing was held before Judge Carr on the habeas corpus action. Daniel and Sandra appeared in person

and with counsel and both sides offered evidence in full. At the conclusion of the hearing, Judge Carr made findings of fact and conclusions of law granting the writ of habeas corpus and directed Sandra to deliver the two children to Daniel. Judge Carr's findings and conclusions read:

". . . As far as the divorce action is concerned, this court doesn't have anything to do with the divorce action. The only action that this court has before it is a Writ of Habeas Corpus based upon the detention of the children . . . by the mother of the children to the exclusion of the father, and the father has a decree of the District Court and an Order of the Superior Court of California, in which he was granted the custody of the children and the mother granted visitation rights. Now, this mother over the period of the last two and a half years on the basis of the evidence that I have in this case, and nothing else, has disregarded the California court except when it was to her advantage to recognize the California court. She disregarded the California court at the time of the original divorce, which didn't become final until September the 4th, according to the evidence that I have in this case, 1968. She married on April 15, 1967 and a child was born of that marriage in May of 1967. Then last year, no, this year, in June she went to California for the purpose of and securing an Order of that court modifying the decree and giving her visitation rights to August 27th of this year. She acquiesced and took direct action in the California court at that time and the court granted her the relief, but then she doesn't want to recognize that court as valid at all.

"On top of that as the evidence developed today, is that she remarried her present husband in the early part of this summer, in order, the court must assume, to have a valid marriage at the time she went out for a modification of the decree. She brought one child back and the other one, in accordance with the California court, was transported here to her, sent out by the plaintiff in this action. The plaintiff in this action called the defendant in this action at the Alder address on the 25th of August to find out what plane the children were coming in on, and was notified and told by the defendant, who was at that address at that time, that the children weren't coming back. Then he arrived here and the next activity between the two parties is that he went to the school in Johnson County, Kansas, and got the older of the two girls, who was in school at that time.

"In the meantime and after the plaintiff alleged that she moved from the Alder address to the Wyandotte County address, she enrolled the children in school, which I believe was August 25th and gave her address at that time as 5213 Alder Drive.

"The court does not have any doubt at all that under the facts presented in this case that the detention of the children at the time the temporary order was entered in this case . . . was in Johnson County, Kansas. That is where they were being detained. They were in school at the time the order was entered, and she was served on the 13th at the address. I believe the 13th is correct.

"The court doesn't have any hesitancy at all to say that the detention was in Johnson County at the time this action was filed and at the time that the Order was served setting up the hearing for last Friday.

"The court is going to overrule the contentions of the defendant and the Writ is going to be granted in accordance with the Order of the California court."

Judge Carr stayed the court's order directing delivery of the minor children to Daniel upon the posting of a supersedeas bond by Sandra in the amount of $10,000. Thereafter, Sandra perfected her appeal.

On October 31, Judge Burns overruled Daniel's motion for an order staying the divorce action with respect to all matters pertaining to the two minor children until the appeal from the habeas corpus judgment had been determined by the supreme court. On November 17, the divorce action proceeded to trial on the merits. Sandra was granted a divorce from Daniel and Judge Burns found it was to the best interest of the minor children that they be placed in the care, custody and control of Sandra, and that she was a proper and fit person to have their custody. Daniel was ordered to pay child support and attorney fees. Daniel duly perfected an appeal from that judgment, and from the court's order of September 26, with respect to its determination of Sandra's residency in Wyandotte County. This court ordered the appeals consolidated on January 9, 1970.

The foregoing is the pertinent factual background of these complex appeals to the supreme court. Various contentions have been advanced and briefed by the parties, but we shall direct our attention to those points which are decisive of these consolidated appeals. When that is done, the points fall into their proper place.

Sandra has contended throughout this litigation the California divorce decree was invalid and not entitled to recognition in Kansas for the reason that Daniel's complaint alleged a marriage between the parties which had been severed by the 1962 Missouri divorce decree. Her petition filed on August 22, was based upon the claim the California decree only divorced her from the first marriage on September 3, 1960, and not from the subsequent marriage on August 29, 1962, because the California decree in the statistical part of the complaint alleged only the date of the first marriage. The point is not well taken.

A valid marriage between the parties in a divorce action is a prerequisite upon which jurisdiction is based, and a divorce is the judicial dissolution of a marriage relationship. (*In re Estate of Crump*, 161 Kan. 154, 166 P. 2d 684.) Without the existence of a valid marriage, there is no occasion for granting a divorce. It is

a prerequisite to obtaining a divorce decree that a marriage between the parties be proved, and that the court find the parties were man and wife at the commencement of the suit. An action for divorce insofar as it is limited to one for a divorce, is essentially a proceeding in rem, or speaking more accurately, quasi in rem. The *res* upon which the judgment operates is the status of the parties. (24 Am. Jur. 2d, Divorce and Separation, § 7, p. 181; 1 Nelson, Divorce and Annulment, 2d Ed., § 2.06, p. 28.) Where, as here, the divorce decree was entered against Sandra and in favor of Daniel in another suit in a sister state, it becomes necessary for Sandra to show that the decree was invalid and not entitled to recognition. The foreign decree carries a presumption of regularity, and Sandra's proof failed to show its invalidity and that it was not entitled to recognition in Kansas.

The sufficiency of Daniel's complaint and the validity of the divorce decree are to be determined by California law. The general rule is that a divorce decree valid in the state of rendition is valid everywhere, and a decree void in the state of rendition is void everywhere, permitting it to be collaterally attacked upon the ground the court lacked jurisdiction of the subject matter, or of the parties.

Section 426 (c) of the California Code of Civil Procedure requires certain statistical facts be alleged in a petition for divorce, such as the state and county in which the parties were married, the date of marriage, the date of separation, the number of years from marriage to separation, the number of children of the marriage, the ages and birth dates of minor children, and the Social Security number of the husband and wife. The facts are required to be set forth for statistical purposes to be collected by the Bureau of Vital Statistics of that state. (*Thomas v. Thomas,* 66 C. A. 2d 818, 153 P. 2d 389.) Under the California statute, not every statistic is vital to the sufficiency of a petition for divorce, and allegations as to time and place need only be reasonably complied with. The object is to apprise the defendant of the charges to be met. (3 Nelson, Divorce and Annulment 2d Ed., § 24.08, p. 17.) The important allegation in a petition for divorce is that a marriage relationship exists between the parties at the commencement of the action, which is sought to be severed by the divorce proceeding. (1 Nelson, Divorce and Annulment, 2d Ed., § 2.06, p. 29; 24 Am. Jur. 2d, Divorce and Separation, § 295, p. 446.) Moreover, errors alleged

in a divorce petition present matters for defense which should be pleaded by answer. (*Thomas v. Thomas*, supra.)

While it does not appear that Missouri has a statute similar to Sec. 426 (*c*) of the California Code, in *Stratford v. Stratford*, 225 S. W. 2d 160, it was contended that because the wrong date and place of the marriage were recited in the petition, the court had no jurisdiction to render the divorce decree. In denying the contention, the Missouri Court of Appeals said:

". . . It was not necessary for the petition to allege the date and place of the marriage in order to state a good cause of action. There can be but one lawful contract of marriage between a man and a woman at a given time, and the mere fact that a wrong date and place of entering into the contract may be given, will not defeat the jurisdiction of the court. . . ." (p. 161.)

It was further said:

". . . The allegation in the petition of the time and place of marriage was surplusage, so far as the cause of action was concerned, and the fact that such allegations were erroneous should not render the decree void. The purpose of the suit was to dissolve the only marriage contract existing between the parties." (p. 161.)

It is conceded Daniel's verified complaint filed November 1, 1966, alleged the parties were married September 3, 1960, but it further contained the basic and required allegation that they were then husband and wife, and the parents of two minor children. The complaint alleged two causes of action: Sandra's desertion of Daniel, and that she was guilty of extreme cruelty. It correctly alleged the date of separation of the parties as October 2, 1965, and that the minor children of the marriage were in Daniel's custody. The relief sought was that "[t]he bonds of matrimony heretofore and now existing between the parties be dissolved." It is conceded personal service of summons was obtained upon Sandra in Jackson County, Missouri, which was sufficient to constitute constructive service upon her. Although she did not appear and was in default, the California court heard Daniel's evidence, and on March 3, 1967, an interlocutory judgment of divorce was entered adjudging that Daniel was entitled to a divorce from Sandra—not a divorce from any particular marriage. Later, and on September 4, 1968, Daniel was granted a final judgment of divorce from Sandra, which recited that "the bonds of matrimony between plaintiff and defendant be, and the same are, dissolved." It also awarded Daniel custody of the minor children with rights of reasonable visitation in Sandra. We believe there can be no

question but that under the status of affairs between the parties as above set forth, the California court had jurisdiction of the subject matter of divorce and of the parties, and properly proceeded to render its decree. That decree was rendered in accordance with the laws of that state, and we are of the opinion it dissolved the marital relationship between Sandra and Daniel and restored them to the status of single and unmarried persons.

It is the settled policy of this state to recognize decrees of divorce of sister states as being effectual to terminate the marital relation of the parties where such decree is procured in harmony with the laws of the state where it is rendered. (*Kirby v. Kirby*, 143 Kan. 430, 55 P. 2d 356; *King v. King*, 185 Kan. 742, 347 P. 2d 381.) The California decree of September 4, 1968, was in every respect a valid decree of divorce, and was entitled to full faith and credit in this state under K. S. A. 1970 Supp. 60-1611, insofar as it had the effect of dissolving the marital status of the parties. (*Willoughby v. Willoughby*, 178 Kan. 62, 283 P. 2d 428.) The decree was properly pleaded and was admitted of record in Judge Burns' court, and was *res judicata* to the question of divorce in Kansas. (*Hardman v. Hardman*, 203 Kan. 825, 827, 457 P. 2d 86; *Kirby v. Kirby*, supra.) Sandra made no direct attack upon it in the California court, nor did she make any effort to have it set aside there. Moreover, she was estopped by her conduct to question the California decree since she recognized its validity in at least two respects: First, she married Brown twice on the strength of its rendition, once in 1967, in violation of the interlocutory decree, and again in 1969, in recognition of the final decree, on the assumption that, as Judge Carr found, "she wanted to present a valid marriage prior to her entry into the case in California." The validity of a divorce decree cannot be questioned in a collateral proceeding concerning any rights arising out of a marital relation, by a spouse who takes advantage of such decree by remarrying. (Restatement of the Law, Conflicts of the Law, § 112, pp. 169, 170.) Secondly, she went to California, employed counsel, and sought and obtained important rights through that court's judgment, granting her visitation rights for the summer months of 1969. Having obtained the relief desired, she repudiated the action of the California court by filing the divorce case in Wyandotte County on the theory its decree did not divorce the parties from their second marriage. In short, she took what she deemed beneficial from the California decree, and

when it suited her purpose to proceed otherwise, she ignored the decree. She is barred by such conduct for at least two reasons—the California decree was conclusive as an adjudication, and the practice demonstrated by Sandra cannot be tolerated. A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment and, after having obtained the relief desired, repudiate the action of the court at his whim and caprice. (*Kirby v. Kirby,* supra; *Browning v. LeFevre,* 191 Kan. 397, 381, P. 2d 524.)

The California decree constituted a bar to Sandra's action in Wyandotte County for a divorce between the same parties. She had no cause of action for that relief in Judge Burns' court. As indicated, the existence of a valid marriage between the parties is a prerequisite upon which jurisdiction is based. While Judge Burns' court had jurisdiction of the parties by personal service upon Daniel in Wyandotte County, it had no jurisdiction of the subject matter of divorce in Sandra's action filed August 22. No marital relation existed to litigate about because the California decree had effected a severance of that relation or status. It follows that Judge Burns' judgment of November 17, 1969, was as fundamentally erroneous as if an action had been commenced to divorce parties who were never married.

Sandra argues that even if Judge Burns was in error in concluding the California decree did not divorce the parties from their marriage, no ground for reversal is present. Reference is made to the rule of this court that a judgment of a district court should be upheld on appeal, if the same be correct, although the court may have relied on a wrong ground, or assigned a wrong reason for its decision, and to *Pierce v. Board of County Commissioners,* 200 Kan. 74, 81, 434 P. 2d 858, and cases therein cited. She then argues that if Judge Burns arrived at the right result, that is, the welfare and best interests of the minor children who were present in the state and over whose parents he had *in personam* jurisdiction, that under K. S. A. 60-1606, and whether a divorce was granted or not, and regardless of the reasons for denying such relief, the transfer of custody of the minor children to Sandra should be upheld. The point does not require an extended discussion. As indicated, Judge Burns' court had no jurisdiction of the subject matter of the divorce action, and no authority to make ancillary or final orders in the case. The statute referred to contemplates an action for

divorce about which there is no question of jurisdiction, and a divorce is denied other than for the equal fault of the parties. In that event, the court may make orders authorized by the statute for the benefit of the minor children of the parties. Such a situation is not presented in the record.

Sandra further contends Judge Carr erred in refusing to dismiss the habeas corpus action and accord jurisdiction to Judge Burns' court where the divorce action was first commenced, on the theory of coordinate or concurrent jurisdiction. She relies upon *Schaeffer v. Schaeffer,* 175 Kan. 629, 266 P. 2d 282. The contention cannot be sustained. As indicated, the district court of Wyandotte County had no jurisdiction of the subject matter upon which it could grant Sandra a divorce—that had been done by the California decree. A court, having no jurisdiction of the subject matter, may not proceed on the theory of coordination or concurrent jurisdiction. Moreover, this court takes judicial notice that the Superior Court of Los Angeles County is a trial court having original jurisdiction in all civil cases. It likewise is a court of coordinate or concurrent jurisdiction. That court had jurisdiction over both parties and the subject matter, and, upon Sandra's application, it was exercising continuing jurisdiction over the custody, welfare and best interests of the minor children. Sandra would limit the applicability of the rule of coordinate or concurrent jurisdiction solely to the courts of Kansas. The general rule is that courts should exercise comity between themselves in order to avoid expense and harrassment and inconvenience to the litigants. This general rule is applicable not only between courts of coordinate jurisdiction within the same state, but between federal courts and state courts, and between state courts of different states. (*Schaefer v. Milner,* 156 Kan. 768, 775, 137 P. 2d 156.)

It is not contended the divorce action was a "proper action or proceeding" relating to the custody and maintenance of the minor children of the parties pursuant to K. S. A. 1970 Supp. 60-1611. Sandra's action was one to obtain a divorce from the Missouri marriage of the parties and was based upon Daniel's extreme cruelty and gross neglect of duty. A proper action or proceeding for alimony, separate maintenance, property division, and custody and maintenance of minor children of the parties pursuant to K. S. A. 1970 Supp. 60-1611 is an entirely different cause of action from one for divorce. (*King v. King,* supra, Syl. ¶ 2.) The orders relat-

ing to the custody of the minor children were ancillary to the divorce action, and that action, and all proceedings and orders which followed, including the judgment rendered on November 17, must be regarded as a complete nullity, and void. We hold Judge Burns erred in failing to sustain Daniel's motion to dismiss the action.

We turn now to the judgment of the Johnson district court granting the writ of habeas corpus. Sandra contends Judge Carr committed reversible error when he (1) refused to hear and consider evidence of her Kansas residence, and of changed circumstances and conditions with respect to the welfare and best interests of the minor children, and (2) in giving full faith and credit to the decree and order of the California court. She argues that since the California decree was entered by default on constructive service, and the children were physically present in the state, the habeas corpus action was a "proper action or proceeding" as contemplated by K. S. A. 1970 Supp. 60-1611, to determine the custody of the children.

It would unduly extend this opinion to summarize in detail the allegations of Daniel's verified petition. It is sufficient to say the petition alleged the facts concerning the rendition and the provisions of the California decree; its modification on June 24, and the subsequent events which followed, all of which have heretofore been set forth; that the two minor children were then residing in Johnson County and enrolled in the Roeland Park school; that they were being unlawfully and forcibly detained by Sandra in Johnson County, where she was living and residing with her husband, and in violation of the California decree, which was entitled to full faith and credit in Kansas. Authenticated copies of the pleadings and the decree of the California case were attached. The prayer was that Sandra show the cause of such detention, and that Daniel be awarded the custody and possession of the two children.

Sandra's amended answer denied that the California decree severed the marital relation, and paragraph 6 alleged that due to "changed circumstances and conditions arising subsequent to the decree of divorce in California, the decree should be modified giving custody and control of the children to the petitioner (sic), Sandra L. Perrenoud, now Sandra L. Brown." The answer was filed September 26, which was subsequent to the time the children were ordered by the California court to be returned to Daniel on August

27. Hence, the children were being detained by Sandra in violation of the California order.

Paragraph 6 of the answer was made pursuant to K. S. A. 60-1505 (d), relating to habeas corpus, the pertinent part of which reads:

". . . If the restraint is found to be wrongful . . . the court may make such other orders as . . . *the welfare of a minor physically present in the state may require.* . . ." (Emphasis supplied.)

Following Judge Carr's announcement that he was ordering Sandra to deliver the minor children to Daniel pursuant to the California decree, she made an offer of proof to show that when she was served with summons in the California action in Missouri on January 13, 1967, she was a resident of Kansas and living in Johnson County. Counsel stated the proffer was made pursuant to K. S. A. 1970 Supp. 60-1611, which provides in substance that if a defendant in a divorce action commenced in another state was a resident of Kansas at the time the foreign decree was entered upon default, and such court did not have jurisdiction over the person, all matters relating to the custody and maintenance of the minor children shall be subject to inquiry and determination in any proper action or proceeding brought in the courts of this state within two years, as though the foreign decree had not been rendered. Sandra made a further offer of proof that the best interests of the two children would be served by permitting them to remain with their mother in Kansas. Judge Carr denied the proffers, and stated:

". . . the last Order was the Order issued out of the California court, which she was personally present and which she represented and asked the court for the relief which she received on June 24th, I believe of 1969, and recognized it and accepted the jurisdiction of the court. She had remarried on the validity of the California decree. And this court, although it is not involved in the divorce action and doesn't intend to interfere at all with the divorce action, is of the opinion that she is estopped to file an application for a divorce at this time."

Whether a child custody order will be changed or modified rests in the sound judicial discretion of the district court and its action thereto will not be disturbed on appellate review unless the record makes it clearly appear its discretion has been abused. (*Whitebread v. Kilgore,* 193 Kan. 66, 68, 391 P. 2d 1019, and cases cited.) Hence, the question presented is whether Judge Carr abused his discretion under the circumstances, in giving legal effect to the final decree and custody order of the California court, and

erred in refusing to hear Sandra's proffer of Kansas residence, and of changed circumstances and conditions of the children following the rendition of the visitation order.

Without question, the paramount concern of courts in child custody proceedings is the welfare of the child. Beginning with the early cases written by Mr. Justice Brewer (*In re Bort*, 25 Kan. *308, and *Chapsky v. Wood*, 26 Kan. 650), this court has consistently adhered to the rule that when a controversy arises as to the custody of a minor child, the primary question to be determined by the court is what is for the best interest of the child. (*Burns v. Burns*, 177 Kan. 116, 276 P. 2d 308; *Whitebread v. Kilgore*, supra; *Lyerla v. Lyerla*, 195 Kan. 259, 403 P. 2d 989, and cases cited.) Our statutes now provide that "physical presence within the state" is made the jurisdictional basis for custody orders in divorce cases. (K. S. A. 60-1501; 60-1505 [*d*]; K. S. A. 1970 Supp. 60-1610 [*a*] [*i*].)

In the case at bar, the issue is complicated by all the facts and circumstances relating to the California decree and the visitation order which Sandra sought and obtained upon representation she would return the children to Daniel on August 27, and upon her application for a permanent change of custody of the children, which was continued to a future date. In less than one month after Georgia was delivered to Sandra's home in Shawnee Mission, and five days before she was required to deliver the children to Daniel in California, Sandra commenced her divorce action in Wyandotte County and sought permanent custody of the children. Daniel then commenced the habeas corpus action in Johnson County. That Judge Carr's court had jurisdiction in the instant case to hear evidence of changed circumstances and conditions is clear, particularly in view of *Lyerla v. Lyerla*, supra. That case held that an order awarding custody of a minor child in an action for divorce is *res judicata* only as to matters as they existed when the order was made, and does not bar later inquiry into the issue of custody when circumstances have changed if the child is physically present in the state, even though the court of another state had "concurrent jurisdiction." The question presented is whether Judge Carr erred in giving effect to the California decree and order based upon "concurrent jurisdiction."

Frequently courts have been faced with the problem whether to give "full faith and credit" or "comity" to a sister state's decree

and refuse to reexamine its merits, or to exercise their own discretion and protect the welfare of minor children within their jurisdiction. (*Kirby v. Kirby*, supra; *Murphy v. Murphy*, 196 Kan. 118, 410 P. 2d 252, 35 A. L. R. 3d 512; *Leathers v. Leathers*, 162 C. A. 2d 768, 328 P. 2d 853.) An analysis of our decisions shows that the solution has been as varied as human needs. This has resulted in the general rule stated in our cases, and restated in *Lyerla v. Lyerla*, supra. This court has recognized that a decree of a court of one state having jurisdiction relating to the custody of minor children, is, under the doctrine of "comity" prevailing among sister states, entitled to recognition in this state. However, full faith and credit has only limited application to child custody decrees; it is inherent in the nature of such a decree that it is not final and conclusive, but is subject to the right of the parties to show a change of circumstances and conditions. (*Price v. Price*, 187 Kan. 292, 356 P. 2d 1013; *Moloney v. Moloney*, 163 Kan. 597, 185 P. 2d 167; *White v. White*, 160 Kan. 32, 159 P. 2d 461.)

It is apparent that, on the basis of our statutes forming the basis of our "free discretion" rule and a rejection of "full faith and credit" or "comity" with respect to recognition of child custody decrees rendered by a court of a sister state, the door is open wide, so to speak, to "forum shopping" by scheming parents who seek a redetermination of their custodial rights in a more favorable jurisdiction, or seek to relitigate the question in courts of other states based upon an allegation of changed circumstances and conditions. Some decisions point out that such abuse may be prevented by the imposition of the "clean hands" doctrine which prevents a parent from invoking the court's jurisdiction if he is a fugitive from the state issuing such decree, or has made misrepresentations in some way to obtain the custody of the children, or is flaunting a foreign proceeding or decree. The doctrine seems to be making advancement in family law and is being relied upon in some jurisdictions where the circumstances merit its application. In cases of this character, the court is dealing with a matter equitable in nature where the child's welfare is the paramount consideration, and it is a familiar equitable maxim that "[h]e who comes into equity must come in with clean hands." (*Price v. Price*, supra.)

The "clean hands" doctrine was formulated and approved in *Leathers v. Leathers*, supra, where it was held:

"Courts of this state, by invoking the doctrine of 'clean hands,' will recognize and enforce custody decrees of a sister state, without reexamination of their merits and regardless of a change of conditions, where there is misconduct or malfeasance on the part of the parent seeking such reexamination. (Syl. ¶ 6.)

The opinion enumerates various acts of misconduct sufficient to invoke the doctrine, and also states that a foreign custody decree is enforcable against a parent who is in some way defying the decree or the jurisdiction of the court that issued it. It states the petitioner's "clean hands" is a most important consideration in the exercise of judicial discretion in determining whether a foreign decree should be reexamined on its merits, and, further, that in the interest of the welfare of the child, custody decrees of a sister state are subject to an independent reexamination by courts, although this discretion will not usually be exercised where the parent seeking relief in the courts has "unclean hands." The "clean hands" doctrine has been applied in *Crocker v. Crocker*, 122 Colo. 49, 219, P. 2d 311; *In Re Mullins*, 26 Wash. 2d 419, 174 P. 2d 790; *Fahrenbruch v. People ex rel. Taber*, __ Colo. __, 453 P. 2d 601; *Perry v. Superior Court*, 7 Cal. App. 3d 236, 86 Cal. Rptr. 607, and *Marlow v. Wene*, 240 Cal. App. 2d 670, 49 Cal. Rptr. 881. See 51 Mich. L. Rev. [Ehrenzweig], Interstate Recognition of Custody Decrees, pp. 345, 357-359, where it was said:

"There is one type of case, however, in which a deviation from this principle by the practice of "comity" seems required in the interest of both the child and society, and where the Kansas rule of full discretion does not represent either existing or desirable law. This is the case of the parent who, dissatisfied with a custody award, seeks a redetermination of the issue in the court of another state. To encourage such scheming is clearly harmful particularly where the second court's jurisdiction has been obtained in bad faith. It is true that the parent's wrong by itself should not preclude a solution dictated by the child's interest, and many courts have so said. But as Professor Stansbury suggested, even without regard to any wrong done, 'stability of environment . . . in itself is an important factor in the welfare of the child.' "

See, also, 47 Cal. L. Rev., Conflict of Laws: Recognition of Sister State Child Custody Decrees: Application of the Clean Hands Doctrine, p. 750.

The "clean hands" doctrine, as applied in child custody cases, is an equitable one, is not an absolute, and is to be applied or not applied at the court's discretion in each particular case. (*Marlow v. Wene*, supra.) It may be invoked where fraud or its equivalent exists, or where a party obtains or retains custody of a child in violation of the decree of a sister state for purposes of relitigating the custody issue.

The record shows that in granting the writ of habeas corpus, Judge Carr, in effect, recognized and applied the doctrine of "clean hands." Gleaned from his findings is the conclusion he was of the opinion Sandra's entire course of conduct was preconceived and calculated to obtain the right to bring the children to her home in Johnson County, and then attempt to relitigate her custodial rights while they were present in this state. It is apparent he also concluded that in her attempt to relitigate the issue, she was estopped by her conduct to invoke the jurisdiction of the Wyandotte district court. While he did not state the doctrine in so many words, it is evident he had the principle in mind when he stated the following:

". . . Now, this mother over the period of the last two and a half years on the basis of the evidence that I have in this case, and nothing else, has disregarded the California court except when it was to her advantage to recognize the California court. She disregarded the California court at the time of the original divorce, which didn't become final until September the 4th, according to the evidence that I have in this case, 1968. She married on April 15, 1967 and a child was born of that marriage in May of 1967. Then last year, no, this year, in June she went to California for the purpose of and secured an Order of that court modifying the decree and giving her visitation rights to August 27th of this year. She acquiesced and took direct action in the California court at that time and the court granted her the relief, but then she doesn't want to recognize that court as valid at all."

We think it may not be said that, under the circumstances which attend, Judge Carr abused his discretion in giving full faith and credit to the California decree without reexamination of its merits, regardless of alleged change of circumstances. As has been noted, Sandra remarried in recognition of the California decree, and when she went to California and intervened in that court seeking visitation rights and permanent change of custody, she asserted that such court had jurisdiction and authority to consider and pass upon her right to the custody of the children. She sought affirmative relief in such court; she obtained some relief from it, and she was given the custody of the children to visit her for the summer. Shortly after she obtained that relief, and just prior to the time she was required to deliver the children to Daniel, she ignored that decree and sought permanent custody of the children in the Wyandotte district court. As we have seen, that court had no jurisdiction in her action to grant such relief. She stood in defiance of the lawful order of the California court which we think was sufficient to warrant Judge Carr's application of the "clean hands"

doctrine and enforce the California decree without reexamination of custodial merits as to change of circumstances. The "changed circumstances" rule does not permit a parent to go from one state to another relitigating issues which have been very recently resolved in another jurisdiction. (*Perry v. Superior Court,* supra.)

Little need be said concerning Judge Carr's finding that Sandra unlawfully restrained the children in Johnson County. The record contains substantial evidence to support his findings the restraint took place in that county. We affirm the judgment of the Johnson district court issuing Daniel a writ of habeas corpus, and directing delivery of the two minor children to him in accordance with the California decree. We reverse the judgment of the Wyandotte district court with directions to sustain Daniel's motion to dismiss the action.

It is so ordered.