No. 48,857

JUNKO KENDALL, *Appellee,* v. KEITH R. KENDALL, *Appellant.*

(585 P.2d 978)

Opinion filed October 28, 1978.

*Lawrence P. Ireland,* of Topeka, argued the cause and *William L. Winkley,* of Salina, was on the brief for appellant.

*Randall E. Fisher,* of Barta & Barta, of Salina, argued the cause and *Jerome P. Hellmer,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This action was commenced in the district court of Saline County by plaintiff-appellee Junko Kendall against her former husband, Keith R. Kendall, for division of property and alimony pursuant to K.S.A. 60-1611. Keith appeals from the judgment entered by the trial court.

At the outset we note that the only testimony in the trial court was that of Mrs. Kendall, a Japanese who obviously experiences some difficulty with the English language. It is difficult to determine from the trial transcript, printed record and briefs the exact time sequence of the various facts before the trial court. However, we will place them in their apparent chronological order as disclosed by the printed record and trial transcript.

Plaintiff and defendant were married December 1, 1952, in Sapporo, Japan, and continued to reside there until June, 1953, when they came to the United States. Keith was in the military service and prior to his enlistment had been a resident of the State of Ohio. Upon the parties' arrival in the United States, Keith was discharged and it appears that they then went to West Virginia, where they resided for some period of time. During this period Keith was attempting to find employment in the steel mills in Ohio. Eventually he found employment and the parties settled in

Steubenville, Ohio. Subsequently, Keith left his wife and went to Canada with a girl friend. Keith and his newly-found love resided for a few months in Canada and then he returned to Junko in Steubenville. Later Keith again joined the military service and was stationed at Ft. Knox, Kentucky. He sent Junko to live with friends in Ohio and took his girl friend to Ft. Knox. Keith and his current girl friend came to a parting of the ways and Junko was asked to return to him in Kentucky. She did. Keith was subsequently sent to Korea for a tour of duty lasting 1-½ to 2 years. The record is silent as to the whereabouts of Junko during this period. Upon Keith's return he was stationed in the state of Washington where Junko joined him. Approximately 1 year later, Keith was transferred to Germany where he and Junko resided for some 3 years before being returned to Washington. Keith's tour of duty was completed but he re-enlisted and was sent to Viet Nam. While Keith was in Viet Nam, Junko returned to Japan for about 1 year. Keith returned to the United States in 1971 and Junko joined him at Ft. Riley, Kansas, where they lived until Keith again went to Viet Nam. At that time, Junko moved to Salina and has been a continuous resident of Kansas since 1971. When Keith's latest tour of duty in Viet Nam was completed, he was returned to Indiana where he retired from military service. The record is confusing as to the time spent in Indiana. It appears that Keith attended business college in Indiana, worked there and eventually returned to Ohio. In June, 1973, Keith filed an action for divorce in the state of Ohio and a decree was granted in October, 1973. Sometime in 1973, Keith returned to Viet Nam as a civilian to pick up his most recent girl friend, whom he met during his military tour of duty. He returned with her to the United States where they were eventually married, presumably after the Ohio divorce had been entered. Service on Junko in the Ohio case was by certified mail in accordance with the Ohio Rules of Civil Procedure. She acknowledges receiving notice of the Ohio action but made no appearance in the Ohio proceedings and did not voluntarily submit to the jurisdiction of the Ohio court.

On October 8, 1974, Junko filed her action in Saline County for a division of property and allowance of alimony, pursuant to K.S.A. 60-1611. Defendant was served personally in Ohio pursuant to K.S.A. 60-308(b)(8), entered his appearance in the Kansas action and filed an answer to the petition. He failed to respond to

Kansas discovery procedures, failed to comply with specific orders of the trial court, failed to cooperate with his counsel, and failed to appear for trial. By his answer Keith contended that the Kansas court did not have jurisdiction to hear the case filed by Junko due to the prior decree entered in Ohio. No evidence in support of his contention was offered at the time of trial. After a trial, Junko was awarded certain personal property within Kansas and an alimony judgment payable $200.00 per month until her death or remarriage. Defendant, Keith R. Kendall, appeals.

The Ohio divorce decree states:

"This cause came on to be heard on the Complaint of the Plaintiff, and the evidence, the Defendant having been duly served with service of Summons according to law.

"The Court finds, from the evidence adduced, that the Plaintiff has been a resident of Ohio for at least one year, and a bona fide resident of this Stark County for more than ninety days immediately preceding the filing of his Complaint, and that the parties were married December 1, 1952 at Sapporo, Japan, and that no children have been born of said marriage.

"The Court further finds, that the Court has jurisdiction of the parties, and jurisdiction of the subject of this action.

"The Court further finds, from the evidence adduced, that the allegations of the Complaint are true, and that the Defendant has been guilty of gross neglect of duty, and that the Plaintiff is entitled to a divorce as prayed for in his Complaint.

"It is hereby ordered, adjudged and decreed that the marriage contract heretofore existing between the parties is hereby dissolved and held for naught, and the parties are hereby released and discharged from the duties and obligations of the same.

"It is further ordered, adjudged and decreed that all property presently in the possession of the respective parties shall remain as their individual property, free and clear of any claims of the other party.

"Plaintiff to pay the costs of this action, taxed at $_____. No record."

A copy of the journal entry reflecting the findings and judgments of the Ohio court was admitted in evidence by stipulation. The only other evidence before the trial court was the testimony of Junko, a copy of the clerk's docket sheet from the Ohio case, a stock certificate and a statement from Keith authorizing Junko to endorse insurance checks on their mobile home in Salina.

The trial court gave full faith and credit to the Ohio decree insofar as it granted Keith a divorce but found that the Ohio court did not have personal jurisdiction over Junko. The court then found that it had personal jurisdiction over Keith and proceeded to make an order dividing the property of the parties and granting alimony to Junko.

Appellant asserts two principal points on appeal. First, he contends it was error for the Saline County District Court to conclude that the Ohio court did not have personal jurisdiction over Junko and second, that it was error for the court to conclude that it had jurisdiction to enter orders for alimony and property settlement.

Appellant's basic argument appears to be that he and Junko were residents of Ohio when he re-enlisted in the military service, that he had no intent to change his domicile, that he returned to Ohio after his military discharge and therefore, under the Ohio long arm statute, the Ohio court obtained personal jurisdiction over Junko in the Ohio divorce proceedings. Appellant further contends that the Ohio decree is *res judicata* as to all matters growing out of the marriage relationship and therefore the Kansas court had no jurisdiction to entertain Junko's suit.

Rule 4.3 of the Rules of Civil Procedure for the State of Ohio provides, in part:

"(A) When Service Permitted. Service of process may be made outside of this state, as provided herein, in any action in this state, upon a person who at the time of service of process is a nonresident of this state or is a resident of this state who is absent from this state. The term 'person' includes an individual . . . who, . . . has caused an event to occur out of which the claim which is the subject of the complaint arose, from the person's:

. . . .

"(8) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state.
"(B) Methods of service.
"(1) Service by Certified Mail. Service of any process shall be by Certified Mail unless otherwise provided by this rule."

This provision as to long arm jurisdiction is almost identical to our statute, K.S.A. 60-308(*b*)(8). Both statutes give the party to the marital relationship the right to obtain a personal judgment against the other spouse, or ex-spouse, if the parties lived in the marital relationship within the state and if the party bringing the action *continues to reside in the state where the action is commenced.*

K.S.A. 60-1611 provides:

"A judgment or decree of divorce rendered in any other state or territory of the United States, in conformity with the laws thereof, shall be given full faith and credit in this state; except, that in the event the defendant in such action, at the

time of such judgment or decree, was a resident of this state and did not personally appear or defend the action in the court of such state or territory, and such court did not have jurisdiction over his or her person, all matters relating to alimony, and to the property rights of the parties, and to the custody and maintenance of the minor children of the parties, shall be subject to inquiry and determination in any proper action or proceeding brought in the courts of this state within two (2) years after the date of the foreign judgment or decree, to the same extent as though the foreign judgment or decree had not been rendered."

The question squarely before this court is whether the Kansas trial court, based upon the evidence before it, was required to recognize the decree of the Ohio court as determining all matters relative to property and alimony. We think not.

The basic case on extraterritorial jurisdiction is the historic decision in *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878), wherein the United States Supreme Court laid down the rule that a personal judgment could not be rendered by a court unless there was personal service upon the defendant within the territorial jurisdiction of the court. The doctrine of *Pennoyer v. Neff* has been modified over the years by decisions of the United States Supreme Court and it is now generally accepted that non-domiciliary jurisdiction sufficient to support a personal judgment can be obtained in certain circumstances. In *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945), the Court softened the previous rule and adopted a standard based upon minimum contacts with the forum state and the doctrine of "fair play and substantial justice." For the latest discussion of the principles set forth in *International Shoe* see *Shaffer v. Heitner*, 433 U.S. 186, 53 L.Ed.2d 683, 97 S.Ct. 2569 (1977).

For the Ohio court to have obtained personal jurisdiction over Junko the parties must have lived in the marital relationship in Ohio and Keith must have continued to reside in Ohio following Junko's departure from that state. It is not disputed that the parties lived in the marital relationship in Ohio on various occasions. It is equally clear that they lived in the marital relationship in numerous other states and at least two foreign countries with the last marital domicile being Kansas. Junko did not depart the state of Ohio leaving Keith as a resident. She accompanied him to Kansas when he left Ohio. The record is totally void of any evidence upon which the trial court could find continuous residence by Keith in the state of Ohio or that Ohio long arm jurisdiction had been properly invoked. In fact, these contentions

were never presented to the trial court until raised by appellant in post-trial motions. To the contrary the only evidence before the court was the testimony of Junko and she testified they last lived together in the marital relationship in Kansas in 1971 and that she has remained a resident of Kansas ever since. Keith's argument is that as he and Junko were living in Ohio at the time of his last enlistment in the military service, his residency continued in Ohio throughout the balance of his military career and that upon his eventual return to Ohio after his military discharge he could then elect to take advantage of the Ohio long arm statute to subject Junko to the personal jurisdiction of the Ohio court. *Spires v. Spires,*7 Ohio Misc. 197 (1966). The evidence, meager as it is, does not support this position. Keith was discharged in Indiana and apparently attended school and worked there. The Ohio decree merely finds that he was a resident of that state for more than one year prior to the filing of the Ohio petition in June of 1973. The parties' last marital domicile was Kansas where the parties jointly purchased a mobile home, which is still occupied by Junko and being paid for by her.

It is well settled in Kansas that a divorce decree rendered in any other state of the United States is *res judicata* as to the question of divorce, and is entitled to full faith and credit in Kansas if granted in accordance with the laws of the other state. *Perrenoud v. Perrenoud,* 206 Kan. 559, 480 P.2d 749 (1971); *Willoughby v. Willoughby,* 178 Kan. 62, 283 P.2d 428 (1955); *Fincham v. Fincham,* 174 Kan. 199, 255 P.2d 1018 (1953).

It is also well recognized that an action for alimony and property division may be maintained in Kansas even though an ex parte divorce may have been granted in another state so long as the requirements of K.S.A. 60-1611 are met and proper service obtained. *Willoughby v. Willoughby,* 178 Kan. 62; *Fincham v. Fincham,* 174 Kan. 199. Kansas, as the domicile of Junko Kendall, has a right and even an obligation to determine for itself whether the Ohio court had personal jurisdiction over the parties, at the same time giving consideration to the finding of the Ohio court that it had jurisdiction over the parties to the action. *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 1 L.Ed. 2d 1456, 77 S.Ct. 1360 (1957); *Williams v. North Carolina,* 325 U.S. 226, 89 L.Ed. 1577, 65 S.Ct. 1092 (1945); *Williams v. North Carolina,* 317 U.S. 287, 87 L.Ed. 279, 63 S.Ct. 207 (1942).

In *Armstrong v. Armstrong*, 350 U.S. 568, 100 L.Ed. 705, 76 S.Ct. 629 (1956), a husband, while residing in Florida, obtained an ex parte divorce from his wife who had established a domicile in Ohio. Previously the parties had been residents of Florida and the husband continued to be. Constructive service was had on the wife in Ohio and the decisions reflect that she had actual knowledge of the suit and employed an Ohio attorney in connection therewith. *Armstrong v. Armstrong*, 162 Ohio St. 406, 123 N.E.2d 267 (1954). She made no appearance in the Florida action and, after the divorce was granted in Florida, filed suit in Ohio for alimony. The Florida divorce decree provided:

"It is, therefore, specifically decreed that no award of alimony be made to the defendant . . . " 350 U.S. at 569.

The husband in the Ohio action pled the Florida decree as a bar to any action by his ex-wife in Ohio. The Ohio court recognized the decree was valid as to the granting of the divorce but not as to the denial of alimony and proceeded to enter an alimony award to the wife. The Ohio Supreme Court recognized its authority to determine whether Florida had obtained personal jurisdiction over its citizen and stated:

"We would approve the rule that such a decree as it concerns the denial of alimony to the wife is not entitled to full faith and credit in another state. A decree of that kind is one *in personam* and requires either an appearance by, or lawful personal service on, the wife, in order to have extra territorial effect. In other words, in a situation of the kind under discussion, that part of the decree granting a divorce may be immutable, but that part which purports to fix alimony rights is not, and alimony may be the subject of adjudication in the court of another state at a future time." 162 Ohio St. at 410.

The United States Supreme Court affirmed the Ohio decision. *Armstrong v. Armstrong*, 350 U.S. 568 (1956).

A lengthy order for pre-trial was issued by the court and a demand for production and inspection of documents was made by Junko. Defendant's counsel attempted, without success, to obtain the cooperation of his client in responding to the court's orders. If defendant had responded, as ordered, the factual determination of Keith's residence in Ohio and whether Junko's later action was barred by the Ohio decree might have been clarified. His failure to comply with the court's orders deprived the trial court of vital information which might have been beneficial to Keith's position. On the other hand, compliance might

have been fatal to his position. We cannot base our decision on speculation as to what might have been disclosed by such compliance.

On the basis of the entire record and proceedings in the trial court we cannot say the court committed error in finding that the Ohio court did not have personal jurisdiction over Junko and in further finding that it had jurisdiction to enter a personal judgment for alimony pursuant to K.S.A. 60-1611.

Each party herein has requested an allowance of attorneys' fees and costs to be paid by the other party. Having carefully considered the record, trial transcript, all exhibits and briefs, the applications for attorneys' fees and costs are denied.

The judgment is affirmed.

OWSLEY and MCFARLAND, JJ., dissenting.